Stephen S. CROOKER and Pamela A. Crooker, Plaintiffs, Appellees,

v.

Paul METALLO, et al., Defendants, Appellants.

No. 93–1370.

United States Court of Appeals, First Circuit.

Submitted June 25, 1993.

Decided Sept. 29, 1993.

Stephen S. Crooker and Pamela A. Crooker on brief pro se.

Scott Harshbarger, Atty. Gen. and William J. Meade, Asst. Atty. Gen., Boston, MA, on brief for defendants, appellants.

Before BREYER, Chief Judge, SELYA and BOUDIN, Circuit Judges.

SELYA, Circuit Judge.

The issue presented in this appeal is whether the defendants, parole officers, violated a clearly established constitutional right of which a reasonable person would have known when, in August 1989, they arrested plaintiff Stephen S. Crooker at his home for sundry parole violations. The officers conducted a protective sweep incident to the arrest. Stephen Crooker and his wife, Pamela, brought suit, pursuant to 42 U.S.C. § 1983, alleging that the search violated their Fourth Amendment rights. Particularly, they allege that, during the sweep, an officer

lifted their mattress from its box spring and looked between the two.[1] The district court denied the defendants' claim of qualified immunity. The defendants appeal. We reverse.

■ When defendants executed the arrest warrant for Stephen Crooker, they "posses[d] a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed] the officer[s] in believing," that the Crookers' home harbored an individual, one Vincent Tondryk, who "pos[ed] a danger to the officer[s] or others." *Maryland v. Buie,* 494 U.S. 325, 327, 110 S.Ct. 1093, 1094, 108 L.Ed.2d 276 (1990) (citations omitted); *see also Michigan v. Long,* 463 U.S. 1032, 1049–50, 103 S.Ct. 3469, 3480–81, 77 L.Ed.2d 1201 (1983); *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). This reasonable belief permitted a protective sweep of the premises, *i.e.,* "a quick and limited search of premises, incident to [the] arrest and conducted to protect the safety of police officers or others." *Buie,* 494 U.S. at 327, 110 S.Ct. at 1094; *see also United States v. Curzi,* 867 F.2d 36, 39 n. 2 (1st Cir.1989). The defendants, therefore, were justified in searching the Crookers' home for Tondryk and looking in places where Tondryk might have been hiding. Although the district court so found, it nevertheless denied the defendants' claim of qualified immunity on the ground that the search between the mattress and box spring was not within the proper confines of a protective sweep because it would not be reasonable to expect a person to be hiding in those environs. Thus, the court reasoned, the search was not permissible in the absence of a search warrant.

It is true that *Buie* speaks of a protective sweep "narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Buie,* 494 U.S. at 327, 110 S.Ct. at 1094. The facts of *Buie,* however, did not present the issue of the permissibility of a limited search for accessible weapons

(which it is not unreasonable to expect might be hidden between a mattress and box spring) conducted simultaneously with the search for a dangerous confederate of the arrestee. Thus, we cannot say, even today, that *Buie* forecloses the possibility that such a scenario is lawful. Indeed, the Second Circuit recently determined that a protective sweep *can* include a search for weapons within easy reach of an individual whom the officers have reasonably concluded is dangerous. *See United States v. Hernandez,* 941 F.2d 133, 137 (2d Cir.1991); *see also United States v. Lopez,* 989 F.2d 24 (1st Cir.1993) (upholding a weapons search where the police had ample basis for believing that a dangerous weapon was lodged close by, that the defendant might not be acting alone, and that the premises were not secure), *petition for cert. filed,* (U.S. Jun. 23, 1993) (No. 93–5032); *cf. United States v. Irizarry,* 673 F.2d 554, 559 n* (1st Cir.1982) (suggesting that a search for weapons would be unjustified where all persons in a hotel room were under control and the agents knew that no one else was on the premises).

■ In analyzing a claim of qualified immunity, moreover, we are concerned with clearly established constitutional or statutory rights of which a reasonable officer would have known at the time he took action, here, in August 1989. *See, e.g., Quintero de Quintero v. Aponte–Roque,* 974 F.2d 226, 228 (1st Cir.1992) (explaining that "the touchstone of an inquiry into qualified immunity is whether the state actor's behavior was objectively reasonable, as a matter of federal law, at the time and under the circumstances then obtaining"); *Amsden v. Moran,* 904 F.2d 748, 751 (1st Cir.1990) (similar), *cert. denied,* 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991). The protective sweep in *Hernandez* occurred, like the instant sweep, in 1989, and, significantly, that court drew its reasoning not only from *Buie,* but also from *Long* and *Terry*—two opinions of the Court that predated 1989 and dwelt on the balance that must be struck between the need for law

---

1. The defendants deny that, in fact, the mattress was lifted from the box spring. That factual dispute remains unresolved. Our determination of the issue of qualified immunity does not depend on resolution of that dispute as we assume *arguendo* that the mattress search took place in the manner asserted by the plaintiffs.

---

enforcement officers to protect themselves and others and the invasion which a search entails. *See Long,* 463 U.S. at 1049–52, 103 S.Ct. at 3480–83; *Terry,* 392 U.S. at 23–27, 88 S.Ct. at 1881–83; *see also United States v. Elkins,* 732 F.2d 1280, 1285 (6th Cir.1984) ("Once having entered the premises, the agents were then *required* to secure all persons therein and to make a protective sweep for the weapons Elkins was known to favor, for the safety of all concerned.") (Emphasis supplied).

■ In sum, it may well be that, during the course of an otherwise justified protective sweep for a dangerous individual, thought to be in hiding, the Fourth Amendment permits a simultaneously conducted limited search of places which might contain a weapon readily accessible to that as-yet-undiscovered individual. We need not, and do not, reach that question in this case, however, for the operative inquiry on qualified immunity is not whether the defendants actually abridged the plaintiffs' constitutional rights, but whether defendants' conduct was objectively unreasonable, given the constitutional understandings then current. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984); *Quintero de Quintero,* 974 F.2d at 228; *Amsden,* 904 F.2d at 751. The uncertainty that shrouds the question here means, *a fortiori,* that the defendants, in 1989, violated no clearly established Fourth Amendment right of which reasonable officers would have known when they searched between the mattress and box spring. After all, a state actor is neither expected to carry a crystal ball nor "to determine the manner in which the law's grey areas will be clarified and defined." *Borucki v. Ryan,* 827 F.2d 836, 838 (1st Cir.1987).

Finally, we believe it is important to note that nothing approaching a full scale search occurred in this case.[2] Stephen Crooker acknowledged that the officers' sweep of the premises, including the basement, took only five to ten minutes, and that the officers spent only "a couple of minutes" in the bedroom. Apart from the search between the mattress and box spring, nothing in the record suggests that the officers were rummaging aimlessly about. This is persuasive proof that safety, not a search for evidence, was the impetus for, and guiding force behind, the protective sweep at issue here. The Court has taught that a protective "sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Buie,* 494 U.S. at 335–36, 110 S.Ct. at 1099. The sweep conducted by the defendants in this case fulfilled these criteria.

We need go no further.[3] Because the record, read as it must be, in the light most flattering to the plaintiffs, *see Quintero de Quintero,* 974 F.2d at 227–28, shows conclusively that the defendants are entitled to qualified immunity, the district court erred in denying their motion for summary judgment.

*Reversed.*

---

**2.** We think it is useful to contrast what transpired here with the search conducted in *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). That foray lasted between 45 minutes and an hour, *id.* at 754, 89 S.Ct. at 2035, and comprised "a full-blown search of the entire house for evidence of the crime for which the arrest was made." *Maryland v. Buie,* 494 U.S. at 336, 110 S.Ct. at 1099.

**3.** In view of the result that we reach, we need not address defendants' asseveration, premised on cases such as *Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) and *United States v. Cardona,* 903 F.2d 60 (1st Cir. 1990), *cert. denied,* 498 U.S. 1049, 111 S.Ct. 758, 112 L.Ed.2d 778 (1991), that their status as parole officers, coupled with Stephen Crooker's status as a parolee, created a diminished expectation of privacy and broadened the officers' entitlement to conduct a warrantless search.