USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 95-1223 CHARLES STELLA, ET AL., Plaintiffs, Appellees, v. JOHN J. KELLEY, JR., ET AL., Defendants, Appellants. __________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, Senior U.S. District Judge] __________________________ __________________________ Before Selya, Cyr and Lynch, Circuit Judges. ______________ __________________________ Richard E. Brody, with whom Thomas M. Elcock and Morrison, _________________ _________________ _________ Mahoney & Miller were on brief, for appellants. ________________ Harvey A. Schwartz, with whom Schwartz, Shaw & Griffith was __________________ _________________________ on brief, for appellees. __________________________ August 23, 1995 __________________________  SELYA, Circuit Judge. This appeal, which requires us SELYA, Circuit Judge. ______________ to apply the teachings of Johnson v. Jones, 115 S. Ct. 2151 _______ _____ (1995), furnishes virtually a textbook model of the limits of interlocutory review of qualified immunity matters in the post- Johnson era. We conclude that we have jurisdiction over only one _______ facet of the appeal and, on that facet, we affirm the challenged order. I. BACKGROUND I. BACKGROUND This case comes before us for the second time. See ___ Stella v. Town of Tewksbury, 4 F.3d 53 (1st Cir. 1993). We ______ __________________ retell the tale only to the extent necessary to put the issues that we must decide into workable perspective. In Tewksbury, Massachusetts (the Town), the five members of the Zoning Board of Appeals (the Board) are appointed for fixed terms by the Town's governing body (the Board of Selectmen) and may be removed during their terms only for cause. Plaintiffs Charles Stella, J. Peter Downing and Bruce Gordon formerly served on the Board. In that capacity, they voted to grant several controversial variances. When residents complained and the selectmen urged stricter enforcement of the Town's zoning code, the Board balked. Even after the selectmen instigated a citizens' petition demanding greater rigor, and succeeded in attracting over 1,000 signatures, the Board did not mend its ways. In October of 1989, the selectmen created a two-member subcommittee to investigate the Board's performance. The 2 subcommittee held public hearings at which various complaints were aired. When the Board refused to change course, the selectmen decided to clean house. After the Commonwealth's attorney general thwarted an effort by two selectmen, John J. Kelley, Jr. and William J. Hurton, to reduce the size of the Board from five members to three, the selectmen instituted proceedings regarding the possible removal of Board members for cause.1 This time, a bare majority of the selectmen Kelley, Hurton, and Thomas Camara succeeded in ousting members of the Board from office on a series of three-to-two votes.2 In May 1991, three of the casualties of this putsch filed suit against Kelley, Hurton, Camara, and the Town pursuant to 42 U.S.C. 1983 (1988). Their flagship claim was that the selectmen cashiered them in retaliation for their speech (the votes they had cast), thus abridging the First Amendment.3 We need not recount the murmur of skirmishes that ensued. It suffices to say that after two notoriously false  ____________________ 1The selectmen acted in pursuance of a statute providing in relevant part that any member of a municipal zoning board of appeals "may be removed for cause by the appointing authority upon written charges and after a public hearing." Mass. Gen. L. ch. 40A, 12 (1975). 2The selectmen held a separate hearing for each Board member. The hearings occurred on various dates from September to December, 1990. Separate votes were taken with regard to each ouster. 3Although the complaint contained other statements of claim, e.g., an allegation that the selectmen improperly conducted the removal hearings, thus depriving the plaintiffs of procedural due process, the instant appeal relates solely to the First Amendment claim and, hence, we confine our account to that claim. 3 starts (one of which sparked the parties' earlier journey to this court) the selectmen moved for summary judgment on qualified immunity grounds. The district court at first granted the motion but, on reconsideration, reversed its field. The selectmen now appeal from the order denying summary judgment. II. DISCUSSION II. DISCUSSION We begin with the architecture of the qualified immunity defense. We then consider the teachings gleaned from Johnson v. Jones. Finally, we apply the lessons we have learned _______ _____ to the problems that confront us. A A Public officials accused of civil rights violations may raise the defense of qualified immunity as a shield against claims for damages arising out of their actions. If, however, the official's conduct violated some right emanating from federal law, and if the law was clearly established at the time of the infringement, so that an objectively reasonable actor would have realized that his conduct violated the plaintiff's rights, then the qualified immunity defense is unavailable. See Harlow v. ___ ______ Fitzgerald, 457 U.S. 800, 818-19 (1982); Buenrostro v. Collazo, __________ __________ _______ 973 F.2d 39, 42 (1st Cir. 1992). Thus, the doctrine of qualified immunity limits a plaintiff's damages against state actors "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. ______ The meaning of the adjectival phrase "clearly 4 established," as it operates in the qualified immunity arena, has not always been clearly established. The Court has, however, attempted to explicate the phrase: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent. Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citation ________ _________ omitted); see also Crooker v. Metallo, 5 F.3d 583, 585 (1st Cir. ___ ____ _______ _______ 1993); Rodi v. Ventetuolo, 941 F.2d 22, 30 (1st Cir. 1991). We ____ __________ recently wrote: "The inquiry into the nature of a constitutional right for the purpose of ascertaining clear establishment seeks to discover whether the right was reasonably well settled at the time of the challenged conduct and whether the manner in which the right related to the conduct was apparent." Martinez v. ________ Colon, 54 F.3d 980, 988 (1st Cir. 1995). _____ B B The qualified immunity defense is, in part, an immunity from trial as well as an immunity from damage awards. See ___ Siegert v. Gilley, 500 U.S. 226, 232 (1991). Thus, the defense _______ ______ may be asserted by a pretrial motion and, if the motion is rejected, immediate appellate review is sometimes available. See ___ Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). ________ _______ In Johnson v. Jones, the Supreme Court cast new light _______ _____ on the circumstances under which an immediate appeal will lie 5 from the denial of a pretrial motion asserting a qualified immunity defense. The plaintiff, Houston Jones, brought a section 1983 action against five police officers, claiming that they used excessive force incident to his arrest and detention. Three of the five officers proffered a qualified immunity defense and moved for summary judgment, contending that they knew nothing about the alleged beating. The district court denied the motion, finding enough circumstantial evidence to raise genuine issues of material fact anent the movants' liability. The movants pursued an interlocutory appeal, arguing that the record reflected no trialworthy questions. The Seventh Circuit dismissed the appeal, discerning an absence of appellate jurisdiction. 26 F.3d 727, 728 (7th Cir. 1994). The Supreme Court granted certiorari and, resolving a split in the circuits,4 held that "a defendant, entitled to invoke a qualified-immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a `genuine' issue of fact for trial." Johnson, 115 S. Ct. at 2159. Thus, on the _______ one hand, a district court's pretrial rejection of a proffered qualified immunity defense remains immediately appealable as a collateral order to the extent that it turns on a pure issue of  ____________________ 4Prior to the Court's decision in Johnson, several courts of _______ appeals (including this court) permitted interlocutory review of pretrial "evidence insufficiency" claims made by official defendants asserting qualified immunity defenses, while several other courts of appeals refused to afford such review. See ___ Johnson, 115 S. Ct. at 2154 (delineating the division in the _______ circuits and citing representative cases). 6 law, notwithstanding the absence of a final judgment. See id. at ___ ___ 2158; Mitchell, 472 U.S. at 530. On the other hand, a district ________ court's pretrial rejection of a qualified immunity defense is not immediately appealable to the extent that it turns on either an issue of fact or an issue perceived by the trial court to be an issue of fact. See Johnson, 115 S. Ct. at 2159. In such a ___ _______ situation, the movant must await the entry of final judgment before appealing the adverse ruling. See id.; see also 28 U.S.C. ___ ___ ___ ____ 1291 (1988). The bottom line, then, is simply this: a summary judgment order which determines that the pretrial record sets forth a genuine issue of fact, as distinguished from an order that determines whether certain given facts demonstrate, under clearly established law, a violation of some federally protected right, is not reviewable on demand. In reaching this branch of its holding, the Court abrogated our earlier decision in Unwin v. _____ Campbell, 863 F.2d 124, 132 (1st Cir. 1988) (determining that ________ appellate jurisdiction exists in qualified immunity cases for interlocutory appeals brought to test denials of summary judgment that turn on questions of alleged evidentiary insufficiency). Consequently, we acknowledge that Unwin and its progeny are no _____ longer good law.5  ____________________ 5The law sometimes moves in strange and mysterious ways. Our decision in Unwin resolved an apparent conflict between two _____ lines of First Circuit cases: those that refused to consider "evidence insufficiency" issues regarding qualified immunity defenses on interlocutory appeal, see, e.g., Roure v. Hernandez ___ ____ _____ _________ Colon, 824 F.2d 139, 141 (1st Cir. 1987), and those that deemed _____ the exercise of jurisdiction over such issues to be proper, see, ___ 7 C C The threshold question for our consideration is whether Johnson applies retroactively to cases pending on direct appeal _______ on the date the Court handed down its opinion. We hold that it does. When dealing with matters that govern a court's jurisdiction, there is no conceivable bar to retroactive application of a "new," judicially declared rule. Thus, regardless of the fact that the selectmen filed their notice of appeal prior to the Court's decision, Johnson controls. _______ In this case, Johnson requires that we parse the _______ complaint. The plaintiffs claim that the selectmen removed them from the Board because of their voting patterns, and that this unceremonious dumping infringed a constitutionally protected right (free speech). The legal framework that applies to claims of this genre is settled beyond hope of contradiction. When a former government employee brings a First Amendment suit against his employer for taking an adverse employment action against him on the basis of his speech, the premier precedent is Mt. Healthy ___________ City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977). _______________________________ _____ Under the Mt. Healthy paradigm, the plaintiff must show both that ___________ his speech was constitutionally protected, and that it was a "substantial" or "motivating" factor for the adverse action taken against him. Id. at 287. If the plaintiff meets these ___ requirements, the burden of persuasion shifts, and the defendant  ____________________ e.g., Emery v. Holmes, 824 F.2d 143, 147 (1st Cir. 1987). Having ____ _____ ______ come full circle, we now reinstate Roure as the law of the _____ circuit. 8 must then prove "by a preponderance of the evidence" that the employment action was not affected by the speech, that is, that the employer would have acted in the same way toward the plaintiff "even in the absence of the protected conduct." Id. ___ The plaintiffs' First Amendment claim tracks this model. They say, in substance, that their votes were constitutionally protected, and that the selectmen's desire to stifle this "speech" was the salient factor in their removal. The selectmen offer a twofold rejoinder. They assert, first, that the plaintiffs' votes are not constitutionally protected speech (or, at least, that the constitutional protection was not clearly established in 1990, when the selectmen acted), and, second, that the evidence conclusively shows that the plaintiffs were ousted for due cause, namely, incompetence, dereliction of duty, and an intransigent refusal to follow the law. In denying the selectmen's motion for summary judgment, the lower court resolved both of these points in the plaintiffs' favor; the court ruled that the plaintiffs' votes were entitled to free-speech protection, and that the plaintiffs had limned a trialworthy question as to the selectmen's motivation. The selectmen challenge this ruling in both its particulars. D D The interface between Johnson and the two-pronged Mt. _______ ___ Healthy test provides an excellent example of the newly stated _______ limits on appellate jurisdiction in respect to interlocutory appeals from pretrial orders rejecting qualified immunity 9 defenses. Under Johnson, we have jurisdiction to inquire into _______ the first of the selectmen's challenges, that is, to examine the existence vel non of a constitutionally protected right. See ___ ___ ___ Johnson, 115 S. Ct. at 2158. But we lack the power to inquire _______ into, or address, the second of these challenges, that is, the fact-based question of what the evidence does (or does not) show concerning whether the selectmen's actions violated the asserted right a question that depends, in this case, on the selectmen's motives in ejecting the plaintiffs from their seats on the Board. See id. at 2159. ___ ___ The initial question under Mt. Healthy asks whether a ___________ constitutionally protected right is in play at all. This is essentially a legal, not a factual, inquiry. See Wright v. ___ ______ Illinois Dep't of Children & Family Servs., 40 F.3d 1492, 1498-99 __________________________________________ (7th Cir. 1994); Williams v. Kentucky, 24 F.3d 1526, 1532 (6th ________ ________ Cir.), cert. denied, 115 S. Ct. 358 (1994). As the query is _____ ______ framed, the answer to it does not depend upon whose account of the facts is correct. Thus, Johnson which permits immediate _______ review of the rejection of a qualified immunity claim when the issue appealed concerns not what facts the litigants might (or might not) be able to prove, but, rather, whether a given set of facts shows a violation of a federally protected right permits immediate review of the trial court's order in this respect. See ___ Johnson, 115 S. Ct. at 2158; Mitchell, 472 U.S. at 528. Since _______ ________ appellate jurisdiction exists to this extent, we proceed to examine the selectmen's contention on its merits. 10 Basically, the selectmen maintain that the speech at issue here votes cast by public officials is not a form of speech protected by the First Amendment. We do not agree. Voting by members of municipal boards, commissions, and authorities comes within the heartland of First Amendment doctrine, and the status of public officials' votes as constitutionally protected speech was established beyond peradventure of doubt at the time the selectmen defenestrated the plaintiffs. The dispositive precedent on these points is our opinion in Miller v. Town of Hull, 878 F.2d 523 (1st Cir.), cert. ______ ____________ _____ denied, 493 U.S. 976 (1989). In Miller, a section 1983 case, the ______ ______ municipality's board of selectmen allegedly forced the removal of certain elected members of the Hull Redevelopment Authority because of the latter's support for construction projects that the selectmen opposed. See id. at 526-28. There, as here, the ___ ___ selectmen attempted to justify the ouster on grounds of neglect and inefficiency. See id. at 528. Following a jury ___ ___ determination that the plaintiffs were dismissed for their political opinions, and not for the reasons cited by the selectmen, the defendants appealed. They averred, inter alia, _____ ____ that the votes cast by the plaintiffs did not comprise constitutionally protected speech. See id. at 532-33. We ___ ___ rejected this asseveration, concluding that votes cast by public officials merit First Amendment protection. Judge Bownes, writing for this court, stated: 11 [W]e have no difficulty finding that the act of voting on public issues by a member of a public agency or board comes within the freedom of speech guarantee of the first amendment. . . . There can be no more definite expression of opinion than by voting on a controversial public issue. Id. at 532 (footnote omitted). We went on to hold that "elected ___ members of a public agency may not be removed from office for voting contrary to the wishes of the Board of Selectmen." Id. at ___ 533. Given this stalwart precedent which, like fine wine, has only improved with age it is beyond serious question that votes cast by the members of municipal boards are ordinarily entitled to First Amendment protection, and that this protected status was clearly established prior to the date of the present denouement.6 Thus, unless some distinctive feature of this case  ____________________ 6Indeed, we reached this precise conclusion in Miller: ______ We find that in the light of pre- existing law, the unlawfulness of removing plaintiffs from their positions . . . should have been apparent to defendants. . . . At the time the removals were effected, there was firmly embedded in our constitutional fabric the principle that government employees could not be discharged for reasons that infringed on the employee's right of freedom of speech. * * * A reasonable member of the Board of Selectmen would have understood that removal of the members of the [Authority] for voting as they did, was an egregious violation of plaintiffs' first amendment right. . . . There is no basis for defendant's claim of qualified immunity. 12 snatches it from Miller's precedential orbit, the plaintiffs have ______ satisfied Mt. Healthy's first prong. See Rankin v. McPherson, ____________ ___ ______ _________ 483 U.S. 378, 383 (1987) ("It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech."); Perry v. Sindermann, 408 U.S. 593, 597 (1972) _____ __________ (similar). E E The selectmen labor to distinguish Miller in three ______ ways, but to no avail. First, they posit that Miller involved ______ the removal of elected officials whereas this case involves the _______ removal of appointed officials. This is a distinction without a _________ difference. The selectmen have offered no plausible rationale for variable treatment, and no language in Miller supports the ______ conclusion that the First Amendment right at issue applies less broadly to appointed officials as contrasted with elected officials. We, therefore, decline the defendants' invitation to create a wholly artificial dichotomy. Second, the selectmen observe that the language of the relevant removal statutes is not identical. This is true as far as it goes, but it does not go very far. The applicable statute in Miller allowed removal of agency members for "inefficiency, ______ neglect of duty or misconduct in office." Mass. Gen. L. ch. 121B, 6 (1969). Here, the applicable statute permits the removal of Board members "for cause." Mass. Gen. L. ch. 40A,   ____________________ Miller, 878 F.2d at 534 (citations omitted). ______ 13 12 (1975). Once again, the selectmen have advanced no cogent reason why these slight variances in terminology warrant a significant dilution of the First Amendment protection that safeguards votes cast by officials who are subject to removal under section 12. The selectmen reserve their most impassioned rhetoric for their protest that the votes at issue here were "illegal," and that the illegality somehow stripped away the constitutional protection that otherwise would have attached.7 We are not convinced. This argument is merely a back-door approach to an examination of the defendants' reasons for banishing the plaintiffs a topic that, under current circumstances, cannot be broached on interlocutory appeal. See text infra. And, ___ _____ relatedly, the district court rejected this argument on fact- _____ based grounds; since Johnson precludes us from inquiring into _____ _______ factual controversies on an interlocutory appeal, see Johnson, ___ _______  ____________________ 7This argument uses as a vaulting pole a footnote in Miller, ______ 878 F.2d at 533 n.14, in which Judge Bownes quoted United States _____________ v. City of Yonkers, 856 F.2d 444, 457 (2d Cir. 1988) (subsequent _______________ history omitted as irrelevant), to the effect that "just as the First Amendment would not permit [council members] to incite violation of federal law, it does not permit them to take action in violation of such law." Yonkers is inapposite here. That _______ case involved members of a city council who refused to cast votes necessary to effectuate a federal court decree. See id. at 452. ___ ___ The recalcitrant council members tried to raise the First Amendment as a shield against the federal court's order. See id. ___ ___ at 457. On appeal, the Second Circuit balanced the First Amendment claims against "the public interest in obtaining compliance with federal court judgments that remedy constitutional violations," and found that enforcing federal court orders "unquestionably justifies whatever burden on expression has occurred." Id. It is readily apparent that the ___ situation in Yonkers has no known parallel in Tewksbury. _______ 14 115 S. Ct. at 2159, we cannot undertake here and now the factbound delving into illegality that the selectmen's argument necessarily entails. In sum, we have jurisdiction to hear an interlocutory appeal from a pretrial order denying summary judgment on the basis of qualified immunity to the extent that the appeal challenges the trial court's legal determination that votes cast by members of a local zoning board comprise constitutionally protected speech. Exercising this jurisdiction, we find that the defendants' efforts to deflect the Miller rule are unavailing. ______ Consequently, we hold that the votes cast by the plaintiffs, in their capacity as Board members, are entitled to protection under the First Amendment. Since the law from which this holding prescinds was clearly established in 1990, the district court's refusal to grant summary judgment on this ground cannot be faulted. F F The second prong of the Mt. Healthy paradigm addresses ___________ whether or not the constitutionally protected speech amounted to a "substantial" or "motivating" factor in the decision to terminate the plaintiffs qua Board members. See Mt. Healthy, 429 ___ ___ ___________ U.S. at 287. When this appeal was taken on February 27, 1995, Unwin reflected the law of this circuit, and, thus, we would have _____ entertained an interlocutory appeal of the district court's determination that the amassed evidence sufficed to raise a trialworthy issue. Johnson, however, demands a different _______ 15 outcome. Although the selectmen tell a plausible tale to the effect that they ousted the plaintiffs for dereliction of duty rather than on speech-related grounds, that tale is factbound. The district court, in declining to grant the motion for brevis ______ disposition, did so on the basis that the summary judgment record contained enough evidence to raise triable issues of fact concerning the selectmen's motivation. While the selectmen claim that this decision is deeply flawed, Johnson bars pretrial _______ appellate review of such "evidentiary insufficiency" claims. See ___ Johnson, 115 S. Ct. at 2159 (holding that "a defendant, entitled _______ to invoke a qualified-immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a `genuine' issue of fact for trial"). Indeed, Justice Breyer anticipated this very type of circumstance, and made it clear that such cases fell within the class of cases in which an interlocutory appeal does not lie. See id. at 2158 (explaining that the jurisdictional bar ___ ___ extends to "constitutional tort cases . . . [that] involve factual controversies about, for example, intent"). Accordingly, we may go no further. We lack jurisdiction to review, on an interlocutory basis, the district court's finding that there is a genuine factual dispute regarding a substantive element of the plaintiffs' constitutional claim, namely, the selectmen's actual motivation in removing the 16 plaintiffs from office.8 Affirmed. Affirmed. ________  ____________________ 8We see no anomaly in our determination that one facet of the defendants' appeal passes Johnson muster though the other _______ facet does not. Indeed, the Court anticipated that such schismatic situations would develop. See Johnson, 115 S. Ct. at ___ _______ 2159. 17