Kingsley GENAS, Plaintiff–Appellee,

v.

STATE OF NEW YORK DEPARTMENT OF CORRECTIONAL SERVICES, Thomas A. Coughlin III, Stephen Dalsheim, Donald McLaughlin and John McGuinness, Defendants–Appellants.

No. 88, Docket 95–7125.

United States Court of Appeals, Second Circuit.

Argued Sept. 13, 1995.

Decided Feb. 12, 1996.

Marilyn T. Trautfield, Assistant Attorney General, New York City (Dennis C. Vacco, Attorney General of the State of New York, Kathie Ann Whipple, Acting Chief, Litigation Bureau, Assistant Attorney General, New York City, of counsel), for Defendants–Appellants.

Alan J. Reinach, Westlake Village, CA, for Plaintiff–Appellee.

Before: NEWMAN, Chief Circuit Judge, VAN GRAAFEILAND, Senior Circuit Judge and PARKER, Circuit Judge.

PARKER, Circuit Judge:

Defendants-appellants challenge a judgment of the United States District Court for the Southern District of New York, Gerard L. Goettel, *Judge,* denying their motion for summary judgment on the grounds of qualified immunity. Plaintiff alleges that defendants: (1) discriminated against him on the basis of his religion by refusing to accommodate his Sabbath observance, in violation of the Free Exercise Clause of the First Amendment and Title VII (42 U.S.C. § 1983; 42 U.S.C. § 2000e–2); and (2) retaliated against him for exercising his First Amendment right to petition for redress in violation of 42 U.S.C. § 1983. The individual defendants ask us to reverse the district court's denial of qualified immunity for the Free Exercise and retaliation claims. In addition,

all of the defendants ask us to exercise pendent appellate jurisdiction and dismiss the complaint in its entirety.

We find that we have jurisdiction to review the district court's denial of summary judgment for qualified immunity as to plaintiff's Free Exercise claim. We agree with defendants that the district court erred when it denied their motion for qualified immunity on this claim. However, we find that we do not have jurisdiction to review the district court's denial of qualified immunity on the retaliation claim, since this determination rested on the existence of disputed issues of fact. Accordingly, we reverse in part and dismiss the remaining portion of the appeal.

## BACKGROUND

Plaintiff Kingsley Genas has been a member of the Seventh Day Adventist Church since 1973. One of the central tenets of this church requires the observance of the seventh day as the Sabbath, from sundown Friday to sundown Saturday. · Only "work of necessity" may be performed on the Sabbath.

Genas began working at the Downstate Correctional Facility ("Downstate") in 1981, and became a corrections officer in 1987. All corrections officers at Downstate work eight-hour shifts on a rotating schedule of four days on and two days off. The shifts run from 7:00 a.m. to 3:00 p.m., 3:00 p.m. to 11:00 p.m., and 11:00 p.m. to 7:00 a.m. As part of a collective bargaining agreement, officers bid for specific shifts, which are awarded based on seniority. Employees who cannot work an assigned shift are permitted to "swap" shifts with other employees.

From 1987 until February 1989, Genas worked the 3:00 p.m. to 11:00 p.m. shift which, with the rotating schedule, required him to periodically work on Friday and/or Saturday evenings. He did so in violation of his Sabbath. He claims that he "tried to quiet [his] conscience by telling [himself] that [this] work was necessary" and thus permitted by church teachings.

In February 1989, Genas and his wife, who was also an employee at the Department of Correction Services ("DOCS"), agreed that they could no longer work on the Sabbath in good conscience. At that time, Mr. Genas would not have been eligible to switch to a new shift for about two months. In the interim, he felt he needed Downstate's assistance to avoid Sabbath work.

On February 6, Genas contacted defendant Stephen Dalsheim, then Superintendent of Downstate, requesting a meeting to discuss the conflict. The following day, Genas and his wife met with First Deputy Superintendent Donald McLaughlin to explain their need for Sabbath accommodation. DOCS would allow Genas to swap shifts with other corrections officers in order to obtain necessary days off. However, McLaughlin indicated that he would not take further affirmative steps to guarantee particular days off. Decisions on post and shift assignments were based solely on seniority as required by the collective bargaining agreement.[1]

After registering his grievance with the union, Genas was referred to union representative Robert Zeller. Zeller and Genas met with McLaughlin sometime before February 10, proposing numerous arrangements to accommodate Genas' Sabbath observance. For example, they suggested that DOCS place Genas in the unbid resource pool to ensure greater shift flexibility, or that DOCS allow Genas to personally pay the overtime cost of a replacement officer when a swap could not be arranged. McLaughlin rejected their proposals.

Genas was unable to arrange a swap for his shift on Friday, February 10. He did not report to work. On February 15, McLaughlin informed plaintiff that further such absences "would constitute a direct disobedience of a lawful order." Plaintiff once again met with McLaughlin on February 16, and informed him that he would not report to his scheduled shifts on February 17 or 24 due to his religious obligations. He did not report to work on the 17th. .

---

1.  Genas' wife worked the 11:00 p.m. to 7:00 a.m. shift. Accordingly, her only Sabbath conflict occurred on weeks when she was required to work Friday night. She was able to accommodate those conflicts by swapping shifts and using leave time.

Genas called Downstate on February 24 and indicated once more that he would not attend work that day. McLaughlin ordered Genas to report to work or face suspension. Genas did not report for his shift. DOCS suspended him without pay, and gave him a Notice of Discipline seeking his discharge for being insubordinate and AWOL.

After the union filed a grievance on behalf of Genas, an arbitrator found him guilty of insubordination. However, the arbitrator also found that the suspension was improper, and ordered DOCS to reinstate Genas with backpay and benefits. The arbitrator further ordered DOCS to accommodate plaintiff's Sabbath by allowing him to take unpaid leave.

On October 17, 1991, the New York State Supreme Court, Appellate Division, affirmed the reinstatement and backpay but overturned that portion of the arbitration agreement requiring accommodation through the use of unpaid leave. *In re State and Council 82 ex rel. Genas,* 176 A.D.2d 1009, 575 N.Y.S.2d 175 (3d Dept.1991), *appeal denied,* 79 N.Y.2d 756, 583 N.Y.S.2d 191, 592 N.E.2d 799 (N.Y.1992). On April 6, 1992, Genas' counsel wrote DOCS requesting backpay and seeking cooperation in obtaining a night shift for Genas to accommodate his Sabbath observance on his return to service.

On Thursday, April 16, 1992, DOCS Deputy Superintendent for Security John McGuinness called Genas and ordered him to return to work for the 3:00 to 11:00 shift that same day. Having secured a new job in the meantime as a school bus driver for the Arlington School District, Genas told McGuinness that he would need two weeks to give notice to his new employer. McGuinness also informed Genas that his second shift was scheduled for Saturday, April 18, and that no accommodation had been made for his Sabbath observance. Genas did not report to either shift. On April 20, McGuinness again called Genas and demanded that he report to work imme-diately. When Genas failed to do so, DOCS issued a Notice of Discipline ("NOD") seeking Genas' dismissal for being insubordinate and AWOL by missing his shifts on April 16 and 20.

Plaintiff appealed the NOD. Once again, an arbitrator found Genas guilty of insubordination, this time ordering a three month suspension without pay. The suspension ran from January 20 to April 20, 1993. Plaintiff returned to work at DOCS on April 21, 1993, and thereafter succeeded in switching to the 11:00 p.m. to 7:00 a.m. shift. Working this shift, Genas remains employed and has successfully accommodated his Sabbath observance using his leave and arranging swaps with other employees much the same as his wife has done. *See supra* note 1.

In 1989, and again in 1992, Genas filed complaints against DOCS with the New York State Division of Human Rights ("SDHR") alleging discrimination based on race and religion, and retaliation for pursuit of his administrative remedies. The EEOC issued a Notice of Right to Sue Letter on February 3, 1993, and Genas brought this action in district court on March 10, 1993.

Genas' complaint to the district court set forth four claims, three of which remain:[2] (1) religious discrimination and failure to accommodate religious observances in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2; (2) interference with his Free Exercise rights under the First Amendment, 42 U.S.C. § 1983; and (3) unlawful retaliation based on pursuit of an administrative remedy, in violation of his First Amendment right to petition for redress, 42 U.S.C. § 1983.

■ Defendants moved for summary judgment on all of plaintiff's claims based on, *inter alia,* the defense of qualified immunity. The district court denied this motion in its entirety. This appeal followed.[3]

---

2. Genas voluntarily withdrew his claim of racial discrimination.

3. Although they originally moved the court to grant them qualified immunity from all of plaintiff's claims, on appeal, the individual defendants do not ask this court to grant them qualified immunity from plaintiff's Title VII claim. Quali-fied immunity is available to defendants who are sued in their individual capacity. *Anderson v. Creighton,* 483 U.S. 635, 638–39, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987). Since this Court has recently held that Title VII imposes no liability on individuals, *Tomka v. Seiler Corp.,* 66 F.3d 1295 (2nd Cir.1995), the doctrine of quali-

## DISCUSSION

As a threshold matter, we must decide whether we have jurisdiction to hear the present appeal. Generally (with some limited exceptions) federal courts of appeals may only exercise jurisdiction over "final decisions" of the district courts. 28 U.S.C. § 1291. However, the United States Supreme Court has recognized that some decisions may be "final" for the purposes of § 1291 even though they are not "the last order possible to be made in a case." *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964). In *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985), the Supreme Court held "that a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision'" under § 1291.

■■■ However, immediate appeal is not permitted if the district court's denial of summary judgment for qualified immunity rests on a finding that there were material facts in dispute. *Moffitt v. Town of Brookfield*, 950 F.2d 880, 884 (2d Cir.1991). The Supreme Court recently affirmed this conclusion in *Johnson v. Jones*, —— U.S. ——, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). The defendants in *Johnson* sought to appeal a denial of summary judgment based on the district court's determination that a material factual dispute existed over the extent of defendants' involvement in the alleged beating of the plaintiff. The Court unanimously held that a defendant "entitled to invoke the qualified-immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Id.* at ——, 115 S.Ct. at 2159. Thus, when a district judge finds that a factual dispute exists, which is sufficiently material to take a case to the jury, an appellate court should not review even the legal issue of whether this finding of a factual dispute was correct. *See Lennon v. Miller*, 66 F.3d 416 (2d Cir.1995). Still reviewable are denials of summary judgment based on

other legal issues, such as "'whether the facts alleged (by the plaintiff, or, in some cases, the defendant) support a claim of violation of clearly established law.'" *Johnson*, —— U.S. at ——, 115 S.Ct. at 2156 (quoting *Mitchell*, 472 U.S. at 528 n. 9, 105 S.Ct. at 2816 n. 9).

■■■ We find that we have jurisdiction to review the district court's denial of summary judgment on plaintiff's failure to accommodate claim, since our examination turns on an issue of law—whether the given set of facts shows a violation of a federally protected right. However, we do not have jurisdiction to review the district court's determination that fact issues remain as to an element of plaintiff's retaliation claim.

### The First Amendment Failure to Accommodate Claim

■■■ Government officers performing discretionary functions are immune from liability for civil damages if their conduct *either* "did not violate 'clearly established' rights of which a reasonable person would have known, *or* ... it was 'objectively reasonable' to believe that [their] acts did not violate these clearly established rights." *Soares v. Connecticut*, 8 F.3d 917, 920 (2d Cir.1993) (emphasis added); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). As a result, a judge evaluating a claim of qualified immunity must first determine whether the federally protected right the defendant is accused of violating was clearly established at the time of the alleged violation. *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *Robison v. Via*, 821 F.2d 913, 920 (2d Cir.1987). This entails a legal, not a factual, inquiry. *Stella v. Kelley*, 63 F.3d 71, 75 (1st Cir.1995). If the right at issue was not clearly established at the time of the violation, the court should sustain the qualified immunity defense. *Robison*, 821 F.2d at 920.

■■■ In this case, the district court analyzed plaintiff's religious discrimination claim, and concluded that "the contours of

fied immunity is irrelevant to plaintiff's Title VII claims. Therefore, this opinion only considers

qualified immunity as it pertains to plaintiff's Free Exercise and retaliation claims.

the right to be free from religious discrimination and an employer's duty to make reasonable accommodation for religious observance are clearly defined." We hold that the district court erred by defining the right at too abstract a level of generality. *See Anderson v. Creighton,* 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987). Though the duty to reasonably accommodate the religious preferences of employees has been clearly established, it has not been established that an employer acting under the terms of a collective bargaining agreement must do more to accommodate religious preferences than is required by the agreement. Since, as we discuss below, it was not clear at the time of the defendants' acts that the interest asserted by the plaintiff was protected by the Constitution, we reverse, and grant the individual defendants' motion for summary judgment on their qualified immunity defense to plaintiff's Free Exercise claim.[4]

■■■■■ To prevail on his Free Exercise claim, Genas must first show that a state action sufficiently burdened his exercise of religion. *Sherbert v. Verner,* 374 U.S. 398, 403, 83 S.Ct. 1790, 1793–94, 10 L.Ed.2d 965 (1963). By alleging that he was terminated from a state job on account of his religious practices, Genas has satisfied this requirement for summary judgment purposes. The Supreme Court has long recognized that to "condition the availability of benefits upon [a person's] willingness to violate a cardinal principle of her religious faith effectively penalizes the free exercise of her constitutional liberties." *Sherbert v. Verner,* 374 U.S. 398, 406, 83 S.Ct. 1790, 1795, 10 L.Ed.2d 965 (1963). Public employment is among the benefits that should not be so conditioned. *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972).

Once a plaintiff demonstrated that his Free Exercise rights were substantially burdened by state action, courts traditionally upheld the state action only if it was justified by a compelling state interest. *Wisconsin v. Yoder,* 406 U.S. 205, 221, 92 S.Ct. 1526, 1536, 32 L.Ed.2d 15 (1972); *Sherbert,* 374 U.S. at 406, 83 S.Ct. at 1795. However, in *Employment Division v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), the Supreme Court rejected the compelling state interest standard for at least some Free Exercise challenges. The Court held that the Free Exercise Clause is not offended by a generally applicable criminal law that burdens religious practice if the burden on religion is not the object of the law, but merely the "incidental effect" of an otherwise valid provision. *Id.* at 878–79, 110 S.Ct. at 1600.[5]

■■■■■ Plaintiff's second suspension took place in 1992, after the *Smith* decision. Actions taken by the defendants after *Smith* should be judged in light of its holding. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738 (instructing courts to look at the law at the time of the alleged violation to determine whether the right claimed by plaintiff was clearly established).[6]

The 1992 suspension was based on Genas' refusal to comply with the shift schedule, which was devised in accordance with the collective bargaining agreement between DOCS and its employees. The collective bargaining agreement was not reached to burden religion, but in order to establish a neutral and fair method of selecting shifts. As a result, defendants could reasonably have believed that actions taken in accordance with this valid and generally applicable agreement would withstand a Free Exercise challenge under *Smith. See Ryan v. United*

---

**4.** Since defendants did not appeal the ruling on the Title VII claim, we need only consider this decision as it pertains to the First Amendment claim.

**5.** Courts have not confined the application of *Smith* to criminal statutes. *See, e.g., Ryan v. United States Dep't of Justice,* 950 F.2d 458, 461 (7th Cir.1991), *cert. denied,* 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992); *Cornerstone Bible Church v. City of Hastings,* 948 F.2d 464, 472 (8th Cir.1991).

**6.** In response to *Smith,* Congress passed the Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb to –4 ("RFRA"), explicitly re-establishing the compelling state interest test of *Sherbert v. Verner.* Even if RFRA is retroactive, it is not relevant to our qualified immunity inquiry. The alleged violations took place between 1989 and 1992, and defendants "could not reasonably be expected to anticipate subsequent legal developments...." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

*States Department of Justice,* 950 F.2d 458 (7th Cir.1991) (rejecting plaintiff's Free Exercise failure to accommodate claim as untenable after *Smith* ), *cert denied,* 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992); *Miller v. Drennon,* No. 91–2166, 1992 WL 137578 at *4 (4th Cir. June 19, 1992) (per curiam) ("Because it is clear that the County implemented the policy to reduce costs and more fairly apportion work and not to prohibit the exercise of religion, Miller's claim that the scheduling policy violated his first amendment rights must fail [under *Smith* ]."). Therefore, we reverse the district court, and grant defendants qualified immunity from plaintiff's Free Exercise claim for their actions after 1990.

■ However, this does not end our inquiry, since the defendants' actions in 1989, when Genas was first suspended, preceded the *Smith* decision. We find that the defendants also should have been granted qualified immunity for their actions in 1989, since the scope of plaintiff's right to have his religious needs accommodated was not clear at that time.

First, it was not clear in 1989 what standard should be applied to evaluate government action once a plaintiff proved that his right of free exercise was substantially burdened. According to the Supreme Court in *Smith,* the application of the compelling interest test established in *Sherbert v. Verner* had always been limited. *Smith,* 494 U.S. at 883, 110 S.Ct. at 1602 ("We have never invalidated any government action on the basis of the *Sherbert* test except the denial of unemployment compensation.... In recent years, we have abstained from applying the *Sherbert* test (outside the unemployment compensation field) at all.").

Furthermore, courts have not frequently addressed the standard for assessing failure to accommodate claims under the First Amendment. *See Brown v. Polk County,* 61 F.3d 650, 654 (8th Cir.1995) ("In most of the cases alleging religious discrimination under Title VII, the employer is a private entity rather than a government, and the first

amendment to the Constitution is therefore not applicable to the employment relationship."), *cert. denied,* —— U.S. ——, 116 S.Ct. 1042, —— L.Ed.2d —— (1996).

Title VII law on religious accommodation, which has been significantly more developed than constitutional law in this area, may provide guidance for the analysis of this failure to accommodate claim. Title VII was designed to protect employees from the workplace effects of many of the same forms of discrimination that are forbidden by the Constitution—discrimination on the basis of race, color, religion, gender, and national origin. Courts have often looked to Title VII law for help in delineating plaintiffs' rights under § 1983. *See, e.g. Carrero v. New York City Housing Authority,* 890 F.2d 569 (2d Cir. 1989) (applying the elements of a Title VII hostile environment claim to a § 1983/Equal Protection Clause "hostile environment" claim). After noting the paucity of First Amendment failure to accommodate claims, the Eighth Circuit recently relied on Title VII law after finding that "in the governmental employment context, the first amendment protects at least as much religious activity as Title VII does." *Brown,* 61 F.3d at 654.[7]

We hold that defendants did not violate plaintiff's clearly established rights even under Title VII law. It is not clear that a defendant, operating under a collective bargaining agreement, must do more to accommodate religious preference than is required by the terms of the agreement. *Cf. TWA v. Hardison,* 432 U.S. 63, 82, 97 S.Ct. 2264, 2276, 53 L.Ed.2d 113 (1977) ("[A]bsent a discriminatory purpose, the operation of a [collectively bargained for] seniority system cannot be an unlawful employment practice...."). Furthermore, the Eleventh Circuit recently found that the very type of accommodation made by the defendants here, allowing Genas to voluntarily swap shifts with other employees, satisfied the requirements of Title VII. *Beadle v. Hillsborough County Sheriff's Dept.,* 29 F.3d 589 (11th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2001, 131 L.Ed.2d 1002 (1995).

---

7. *Brown* was decided after *Smith,* but also after RFRA, which re-instituted the compelling state

interest test. *Supra* note 7.

The extent of a state employee's right to have his religion accommodated under the Free Exercise Clause is not clear, at least when the workplace is governed by a collective bargaining agreement. Therefore, we hold that both before and after *Smith,* defendants did not violate clearly established constitutional rights of the plaintiff by refusing to take further steps to accommodate his religion. The district court erred when it denied their claim of qualified immunity, and we reverse this portion of the district court ruling.

### The Retaliation Claim

As discussed above, a defendant may not appeal a denial of summary judgment for qualified immunity if the district court's decision rested on a finding of disputed issues of material fact. Since the district court's denial of qualified immunity as to Genas' retaliation claim rested on just such a finding, we decline to exercise jurisdiction over this portion of defendants' appeal.

Genas claims that when he attempted to return to work in April 1992, defendants retaliated against him for having pursued his grievance through the union and with the New York State Department of Human Rights. Genas' examples of retaliatory conduct include the fact that defendants contacted him on a Thursday and ordered that he report back to work that same day, showing no respect for his obligation to his new employer, and the fact that they placed him back in a shift requiring him to work on Saturday, in spite of his well-known religious obligations. When he failed to report to work on these occasions, defendants sought Genas' dismissal.

█ The district court correctly ruled that plaintiff had a clearly established right to be free of retaliatory action taken because he exercised his constitutionally protected right to petition for redress. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 283–84, 97 S.Ct. 568, 574–75, 50 L.Ed.2d 471 (1977); *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir.1988). Therefore, if defendants subjected plaintiff to disciplinary action in retaliation for his peti-

tioning of the government, such conduct violated clearly established constitutional law.

The court found that a factual dispute existed as to whether the defendants intended to retaliate against the plaintiff due to his pursuit of this grievance. Defendants argued that their actions represent an objectively reasonable response to a direct violation of lawful orders. Plaintiff countered with evidence indicating that defendants disciplined him unusually quickly, and that they gave him extraordinarily short notice to report back to work. The court held that since "[p]laintiff ha[d] put forth specific, nonconclusory circumstantial evidence of retaliation sufficient to overcome the heightened evidentiary standard for qualified immunity," defendants were not entitled to summary judgment.

This ruling is not appealable under *Johnson.* The district court came to the correct legal conclusion that the law of retaliation is clear, and then determined that a fact issue remains as to an element of the claim on the merits. *Johnson* bars pretrial appellate review of such "sufficiency of the evidence" claims. In addition, the *Johnson* Court explicitly extended its ruling to constitutional tort cases that, like the case before us, involve questions of intent. *Johnson,* ‒ U.S. at ‒, 115 S.Ct. at 2158 ("Many Constitutional tort cases ... involve factual controversies about, for example, intent—controversies that, before trial, may seem nebulous ... [resolution of those controversies] means greater delay."). Thus, we decline to review this ruling at the present time and dismiss this portion of the appeal.

█ We could choose to exercise pendent appellate jurisdiction over this portion of the appeal, since we reviewed the denial of summary judgment on the failure to accommodate claim. However, we decline to do so, as there is not "sufficient overlap" in the factors relevant to the appeal of the two issues. *See San Filippo v. U.S. Trust Co. of New York,* 737 F.2d 246, 255 (2d Cir.1984), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985).

## CONCLUSION

For the foregoing reasons, we reverse the district court's decision as it pertains to plaintiff's First Amendment failure to accommodate claims, and decline to exercise jurisdiction over the appeal based on plaintiff's retaliation claim. In addition, we decline to exercise pendent appellate jurisdiction to review plaintiff's remaining claims.