Ramos v. Desmarais                    CV-89-214-M    02/27/96
                   UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


Jesus Ramos,
      Plaintiff,

      v.                                          Civil No. 89-214-M

Madeline Desmarais; Robert LeBlanc;
Paul Lemieux; and
Hillsborough County Jail Superintendent,
      Defendants.


                            O R D E R


      Plaintiff, Jesus Ramos, brings this pro se civil action

seeking damages pursuant to 42 U.S.C. §1983 for alleged

violations of his civil rights.  When he began this proceeding,

Ramos was incarcerated at the New Hampshire State Prison.

However, the events which form the basis of his complaint

allegedly occurred during his relatively brief incarceration at

the Hillsborough County (New Hampshire) Jail, prior to his

transfer to the state prison.


      The court has previously dismissed two of the four counts

set forth in the complaint.  Defendants now move the court to

dismiss the remaining counts based on their alleged entitlement

to qualified immunity.  While defendants' immunity defense might

have more substance if presented (and appropriately supported) in the form of a motion for summary judgment, because it is presented as a motion to dismiss, the court must view all facts alleged in the complaint in the light most favorable to plaintiff.  From that perspective, defendants' motion must be denied.

## Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  In considering a motion to dismiss, "the material facts alleged in the complaint are to be construed in the light most favorable to the plaintiff and taken as admitted, with dismissal to be ordered only if the plaintiff is not entitled to relief under any set of facts he could prove." Chasan v. Village District of Eastman, 572 F.Supp. 578, 579 (D.N.H. 1983), aff'd without opinion, 745 F.2d 43 (1st Cir. 1984) (citations omitted).

2

**Discussion**

The remaining counts of the complaint relate to two distinct series of events. Viewed in the light most favorable to Ramos, the material facts alleged in his complaint appear to be as follows.

A.    Unnecessary Force.

On September 16, 1986, Ramos asked Correctional Officer LeBlanc to move him to another cell. Ramos was apparently concerned that the cell in which he was confined contained a lighter on the wall and other inmates were gathering around it, smoking cigarettes. Ramos claims that when he requested a different cell and mentioned that there were other cells available on the same tier, officer LeBlanc opened the cell door and grabbed him by the throat. Ramos claims that officer LeBlanc then called for assistance and officer Lemieux responded. According to Ramos, Lemieux placed him in a head lock and threw him against the wall and then down to the floor.

Defendants claim that the officers' conduct was a reasonable, measured, and justified response to Ramos' refusal to obey LeBlanc's order to return to his cell and subsequent

3

physical struggle with the officers.  Defendants also point out that: (1) Ramos had a history of aggressive and assaultive behavior; and (2) he has not alleged that he sustained any specific injuries as a result of the incident.  Finally, defendants claim their conduct was specifically authorized by N.H. RSA 627:6, V.[1]

Ramos claims that LeBlanc and Lemieux violated his constitutional right to be free from cruel and inhuman treatment. "[T]he Eighth Amendment . . . serves as the primary source of substantive protection to convicted prisoners in cases such as this one, where the deliberate use of force is challenged as excessive and unjustified." Whitley v. Albers, 475 U.S. 312, 327 (1986).[2]  Agents of the government violate the Eighth Amendment

---

[1]  N.H. RSA 627:6, V provides:

> A person authorized by law to maintain decorum or safety in a vessel, aircraft, vehicle, train or other carrier, or in a place where others are assembled may use non-deadly force when and to the extent that he reasonably believes it necessary for such purposes, but he may use deadly force only when he reasonably believes it necessary to prevent death or serious bodily injury.

[2]  The pleadings filed by the defendants and the nature of Ramos' claims imply that, at the time of the events in question, Ramos had already been convicted and sentenced to a term of incarceration.  If that is the case, his claims are appropriately

4

when their conduct toward an inmate amounts to an "`unnecessary and wanton infliction of pain.'" Id. at 319 (quotation omitted).

Of course, whether defendants' conduct constituted an "unnecessary and wanton infliction of pain" will depend upon the context in which it arose. "[W]henever prison officials stand accused of using excessive force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). The relevant factors to be considered are: (1) the extent of the injury suffered by the inmate, (2) the need for application of force, (3) the relationship between that need and the amount of force actually used, (4) the threat reasonably perceived by responsible officials, and (5) any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321.

---

analyzed under the Eighth Amendment. However, there are several suggestions in Ramos' pleadings that he was a pretrial detainee when those events transpired. If that is the case, his claims must be analyzed under the Fourteenth Amendment. Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983). Obviously, the parties ought to clarify the pertinent facts, either in their motions for summary judgment (if they should elect to file them) or at trial.

5

In support of their assertion that they are entitled to qualified immunity, defendants repeatedly point out that Ramos has not alleged any specific injuries stemming from LeBlanc's and Lemieux's alleged use of excessive force.  However, while the absence of serious injury is relevant to the Eighth Amendment inquiry, it does not end it.  Hudson, 503 U.S. at 7, 9 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.  This is true whether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.").

Even in the face of Ramos's allegations that defendants LeBlanc and Lemieux overreacted to his request to be moved to a different cell and used force which was plainly unwarranted and excessive, allegations which must be taken as true for purposes of ruling on a motion to dismiss, defendants still assert that they are entitled to qualified immunity.  The Supreme Court has held that, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The court of appeals for this circuit has noted that, "the operative inquiry on qualified immunity is not whether the defendants actually abridged the plaintiffs' constitutional rights, but whether defendants' conduct was objectively unreasonable, given the constitutional understandings then current." Crooker v. Metallo, 5 F.3d 583, 585 (1st Cir. 1993).

Assuming the facts alleged to be true, as the court must do at this juncture, there is a sufficient basis upon which to conclude that defendants LeBlanc and Lemieux acted unreasonably in light of the constitutional understandings then current and used excessive force when they attempted to subdue the plaintiff. Accordingly, defendants' attempt to interpose the shield of qualified immunity via a motion to dismiss must, at this early stage of the proceedings, be rejected. See Consolo v. George, 58 F.3d 791, 795 (1st Cir.) (evidence of defendants' unreasonable failure to seek medical attention for plaintiff warranted denial of qualified immunity claim and supported submission of issue to jury), cert. denied, 116 S.Ct. 520 (1995). While "prison

7

administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security," Bell v. Wolfish, 441 U.S. 520, 547 (1979), the core factual issue identified in Whitley, supra, remains unresolved: Did defendants LeBlanc and Lemieux apply necessary and reasonable force against Ramos in a good faith effort to maintain or restore discipline, or did they maliciously and sadistically seek to cause harm?

B.    Deliberate Indifference to Medical Needs.

In count four, Ramos alleges that between September 18, 1986 and April 10, 1987 (when he was transferred to the New Hampshire State Prison), defendants Cleveland and Desmarais were deliberately indifferent to his serious medical needs.  Ramos claims that he became ill and, when a correctional officer found Ramos's toilet filled with blood, he was brought to see a nurse. Ramos claims that the nurse, defendant Desmarais, refused to allow him to see a doctor.  Subsequently, Ramos was taken to a dentist who prescribed medication and a periodontal rinse.  Ramos says this treatment was ineffective and, despite having notified defendant Cleveland of his physical condition and need for

treatment, his subsequent requests for medical attention were ignored. Ramos claims that, as a result of defendants' deliberate indifference to his serious medical needs and their failure to properly treat his dental problems, he suffered a prolonged period of substantial pain and, ultimately, lost several teeth.

Defendants deny Ramos' allegations and counter that during the seven months of his incarceration at the Hillsborough County facility, medical personnel examined Ramos 24 times and provided him with medical advice, treatment, and medications. In support of their claims, defendants have submitted Ramos's medical records and notes from the nursing staff. However, as noted above, defendants have moved to dismiss plaintiff's claims for failure to state a cognizable claim. Fed.R.Civ.P. 12(b)(6). They have **not** moved for summary judgment and, therefore, the court will not consider the materials which they have appended to their pleadings. If the defendants wish the court to consider matters outside the pleadings, they should file a properly supported motion for summary judgment.

As with Ramos's claims of excessive force, his assertions that defendants Cleveland and Desmarais were deliberately indifferent to his serious medical needs are, when viewed in the light most favorable to him, sufficient to preclude the granting of defendants' motion to dismiss. See generally Estelle v. Gamble, 429 U.S. 97, 104-106 (1976).

Defendants' motion to dismiss (document no. 61) is denied. The parties are granted leave to file motions for summary judgment or other dispositive motions on or before April 1, 1996, objections may be filed within thirty (30) days of filing, or, on or before May 1, 1996, whichever is earlier.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

February 7, 1996

cc:  Carolyn M. Kirby, Esq.
     Jesus Ramos