**PRODUCTIVE AUTOMATED SYSTEMS CORPORATION, A Corporation, Appellant,**

v.

**CPI SYSTEMS, INC., A Corporation, and Don Crawford, An Individual, Appellees.**

No. 94–3713.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1995.

Decided July 28, 1995.

---

Alan J. Agathan, St. Louis, MO, argued, for appellant.

Joseph A. McDermott, III, Houston, TX, argued (Lucy A. Singer, St. Louis, MO, on the brief), for appellees.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Productive Automated Systems Corporation (PASCO) manufactures palletizers for use in industrial packaging systems. CPI Systems, Inc., provides total industrial packaging systems for products in bags and drums; Donald Crawford is CPI's president. In 1987, the parties entered into a Sales Agency Agreement in which CPI agreed to serve as PASCO's sales representative in the states of Arkansas, Louisiana, Oklahoma, and Texas. Before the execution of that agreement, CPI had bought products from PASCO to integrate into complete packaging systems for sale to end-user customers. That purchasing/resale affiliation continued during CPI's status as a sales agent in the territory.

CPI submitted a bid to BASF Corporation in New Jersey to supply a system for a BASF plant in Pennsylvania. The bid included a PASCO palletizer. After receiving the contract, CPI ordered a palletizer from PASCO for integration and resale to BASF.

At approximately the same time, however, CPI began exploring the possibility of using a palletizer manufactured by a PASCO competitor, SECC, for the system. Following approval by BASF, CPI canceled the PASCO order, as well as the Sales Agency Agreement, and purchased the competing palletizer.

PASCO sued CPI in mid–1992, claiming breach of contract, because CPI canceled its order, and breach of fiduciary duty, because of CPI's alleged "plot" to remove the PASCO product from the job. At trial in federal district court in late 1993, the court granted CPI's motion for judgment on the fiduciary duty claim at the close of PASCO's case, finding that PASCO had failed to provide sufficient proof that the transaction at issue was within the scope of a fiduciary relationship. The case was submitted to a jury on the issue of breach of contract, and the jury returned a verdict for PASCO in the amount of approximately $14,100.

PASCO appeals, asserting that the trial court erred in dismissing the breach of fiduciary duty claim and in instructing the jury on the contract claim. We affirm in part and reverse in part.

## I.

■ We consider first whether the trial court properly granted CPI's motion for judgment as a matter of law on the breach of fiduciary duty claim. We affirm the trial court's decision, because PASCO failed to present sufficient evidence that the transaction at issue fell within the scope of the fiduciary relationship between it and CPI.

"Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Restatement (Second) of Agency* § 1(1) at 7 (1958); *see also Leidy v. Taliaferro*, 260 S.W.2d 504, 505 (Mo.1953). "An agent is not, as such, in a fiduciary relation with the principal as to matters in which he is not employed." *Restatement (Second) of Agency* § 390, comment d, at 211.

Nothing in Missouri law or in the general principles of agency law indicates that an agent's fiduciary obligations extend to matters not included in the agent's employment or contractual relationship. As a comment to the *Restatement* explains, "[t]he agreement to act on behalf of the principal causes the agent to be a fiduciary, that is, a person having a duty, created by his undertaking, to act primarily for the benefit of another *in matters connected with his undertaking*" (emphasis supplied). *Restatement (Second) of Agency* § 13, comment a, at 58. Similarly, the *Restatement* also advises that "[u]nless otherwise agreed, an agent is subject to a duty to his principal not to act on behalf of an adverse party in a transaction *connected with his agency*" (emphasis supplied). *Restatement (Second) of Agency* § 391 at 212; *see also Restatement (Second) of Trusts* § 2, comment b, at 6 (1959) ("[a] person in a fiduciary relation to another person is under a duty to act for the benefit of the other as to matters *within the scope of the relation*") (emphasis supplied).

The law, moreover, allows agents considerable freedom when acting outside their fiduciary relationships. "[An agent] is not ... necessarily prevented from acting in good faith outside his employment in a manner which injuriously affects his principal's business." *Restatement (Second) of Agency* § 387, comment b, at 202; *see also Restatement (Second) of Agency* § 393, comment a, at 216 ("an agent can properly act freely on his own account in matters not within the field of his agency").

With these elementary principles in mind, we consider their application in this case. For two reasons, we believe that the transaction at issue here clearly fell outside the scope of the fiduciary relationship between PASCO and CPI as established in the Sales Agency Agreement. First, a reading of the agreement reveals that PASCO and CPI intended for the scope of the agency that it created to extend only to sales and negotiations with customers in the territory. The customer in the transaction in this case was BASF, a New Jersey corporation that ordered the palletizer for installation in Pennsylvania. The transaction, therefore, was ex-

ternal to the sales agency relationship and thus was not governed by the agreement. As the trial court noted, moreover, PASCO's behavior provides evidence that even PASCO believed that the transaction fell outside the scope of CPI's agency. That is because PASCO quoted a palletizer for use in the BASF system through its sales agent in New Jersey, thereby signaling an assumption that the transaction was outside CPI's duties as a sales agent.

A second and more fundamental reason that the Sales Agency Agreement did not govern the transaction at issue is that CPI was acting as a purchaser and reseller of PASCO's equipment rather than as an agent of PASCO in the transaction. As CPI's president indicated at trial, and as PASCO's sales orders illustrate, CPI had two separate relationships with PASCO: first, as a sales agent within the territory and, second, as a buyer of PASCO's products for integration and resale outside the territory. PASCO points to nothing in the agreement that would prohibit the continuation of the resale affiliation. In an effort essentially to recast the terms of the agreement to cover the transaction at issue, PASCO argues that the transaction involved the sale of a PASCO palletizer to CPI, and that that transaction occurred in the four-state territory and was therefore governed by the agreement. That argument fails because of the plain language of the Sales Agency Agreement. That agreement is designed only for situations in which CPI acted as a representative, in connection with sales from PASCO to third-party customers, not when CPI was itself a buyer from PASCO.

PASCO calls our attention to the 10 percent discount received by CPI in this sale and in other out-of-territory transactions as evidence that CPI was acting under the Sales Agency Agreement. PASCO's own sales orders, however, list those reductions, not as commissions, but as "OEM Discount[s]." (An OEM is an entity, such as an integrator, that purchases equipment for resale to an end-user.) This sale therefore clearly fell outside the scope of the Sales Agency Agreement. The trial court thus correctly granted CPI's motion for judgment as a matter of law

on the claim for breach of fiduciary duty. Accordingly, we affirm that part of the trial court judgment.

## II.

We turn now to a consideration of whether the trial court failed to instruct the jury properly with respect to damages on the contract claim. Under Missouri law, PASCO's measure of damages is "the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages." *See* Mo.Rev.Stat. § 400.2–708(2). The trial court's instruction, however, told the jury only that the appropriate measure of damages was "any lost profits, and ... any variable costs that were reasonably incurred before the cancellation of the contract[,] reduced by any salvage value realized" by PASCO. The instruction, which PASCO in fact initially requested, thus made no mention of the inclusion of overhead in the calculation of damages.

During closing argument, counsel for CPI told the jury that "included in [plaintiff's figure for damages] is an element called overhead which is neither profit nor variable cost. ... [T]he Court's instruction to you ... does not say overhead." In his rebuttal argument, counsel for PASCO attempted to clarify the law. He stated that "[w]e're entitled to what we would have in our pocket. Now the figure of overhead is in there ... obviously it would fall into profit." At the close of arguments, the court called counsel to a side-bar conference and, on its own motion, asked counsel whether they had any objections to the instructions that the court had previously read to the jury. Counsel for PASCO requested a clarification of the damage instruction to explain to the jury that profit did indeed include reasonable overhead. The trial court refused the request.

■ CPI claims that PASCO failed to make a timely objection to the instruction and therefore cannot raise the error on appeal. *See* Fed.R.Civ.P. 51. CPI argues that the objection was not timely because it did not take place during the instructions conference prior to closing arguments. CPI maintains that the instructions conference consti-

tuted the "[o]pportunity ... to make the objection out of the hearing of the jury" under Fed.R.Civ.P. 51. The rule, however, merely requires that, in order to assign an error in the jury charge, a party must make an objection "before the jury retires to consider its verdict." Nothing in the rule requires that a party's objection occur at an instructions conference or at any other particular time, provided that the party asserts an objection before the jury retires. PASCO objected at a side-bar conference at which the judge asked whether either party had "any objections ... to the instructions that I read to the jury previously." That conference presented another opportunity for objection pursuant to Fed.R.Civ.P. 51, and PASCO requested clarification at that time. The objection was therefore timely.

CPI further argues that PASCO cannot challenge the instruction to the jury because the court gave the very instruction that PASCO originally requested. In support of that argument, CPI cites *Bissett v. Burlington Northern Railroad Co.*, 969 F.2d 727 (8th Cir.1992). That case indicates that a party cannot assign a jury instruction as error if the party argued a contrary position before the district court. *See id.* at 732. *Bissett* is not analogous to this case. The party attempting to challenge the jury instruction in *Bissett* argued a contrary position before the district court throughout the trial and did not attempt to correct the error before the jury retired. In contrast, PASCO's argument before this court is not contrary to the assertions made before the trial court. It is true that PASCO did not originally request an instruction that told the jury that overhead was recoverable. That failure, however, is not fatal to PASCO's assignment of error, because a timely (if somewhat belated) request for a proper instruction was made.

PASCO evidently did not anticipate, prior to CPI's closing argument, that the requested instruction left room for the assertion that overhead was to be excluded from the calculation of damages, and that counsel for CPI would misstate, deliberately or otherwise, the law of Missouri to the jury. When PASCO's counsel realized that the requested jury instruction was imprecise, he asked for clarifi-

cation before the jury retired. Thus, PASCO's position before the trial court was not contrary to its argument here.

 Since the clarification that PASCO requested was a clearly correct statement of Missouri law, the trial court erred in refusing to give it. We therefore vacate the judgment on the contract claim.

### III.

For the reasons stated, we affirm the judgment of the trial court with respect to the claim of breach of fiduciary duty, vacate the judgment on PASCO's contract claim, and remand for further proceedings consistent with this opinion.