USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 96-2108 MARIA TERESA DIAZ, ET AL., Plaintiffs, Appellees, v. MIGUEL DIAZ MARTINEZ, ET AL., Defendants, Appellees, ___________________ TOMAS VAZQUEZ RIVERA, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ _________________________ John M. Garcia, with whom Jos Javier Santos Mimoso and _______________ __________________________ Totti, Rodrigues-D az & Fuentes were on brief, for defendant- _________________________________ appellant. Peter Berkowitz, with whom Roberto Rold n Burgos was on ________________ ______________________ brief, for plaintiffs-appellees. _________________________ April 24, 1997 _________________________ SELYA, Circuit Judge. In Johnson v. Jones, 115 S. Ct. SELYA, Circuit Judge. _____________ _______ _____ 2151, 2156-59 (1995), the Supreme Court discussed the circumstances in which a district court's denial of a public official's attempt to dispose of a claim for money damages by means of a pretrial motion asserting qualified immunity might be immediately appealable. Shortly thereafter, in Stella v. Kelley, ______ ______ 63 F.3d 71, 73-77 (1st Cir. 1995), we applied Johnson and _______ elaborated upon our understanding of it. The interlocutory appeal in this case requires us to reexamine Stella in light of ______ Behrens v. Pelletier, 116 S. Ct. 834, 838-41 (1996). We conclude _______ _________ that our holding in Stella remains fully intact. ______ Before discussing the issue of appealability vel non, ___ ___ we first set the stage. In 1984, Miguel D az Mart nez (Officer D az) became a member of the Puerto Rico Police Force.1 He inspired approximately eighteen disciplinary complaints, many of which involved the profligate brandishing or use of his official firearm without adequate cause. The pi ce de r sistance occurred _____ __ __________ on August 17, 1989, when, after assaulting and threatening to kill his wife, Officer D az captured a police station at gunpoint and held several fellow officers hostage. As a result of this incident, he was cashiered and involuntarily committed to a mental institution for three weeks. Little daunted, Officer D az pressed an administrative appeal. Despite his earlier escapades, he eventually regained  ____________________ 1Although Officer D az is a defendant in the underlying suit, he is not a party to the appeal. 2 his position on the force. At the time of his reinstatement (March 25, 1993), and throughout the period material hereto, the appellant, Tom s V zquez Rivera (V zquez), served as an assistant superintendent of the police force and the director of its "Auxiliary Superintendency for Inspections and Disciplinary Affairs" (having assumed that post in August 1990). In this capacity, V zquez was responsible, inter alia, for maintaining _____ ____ administrative complaint records, identifying recidivist officers (those who repeatedly violated disciplinary standards), and ensuring that "problem" officers received special training. The plaintiffs allege that, when Officer D az rejoined the force, the personnel director ordered an investigation preliminary to authorizing him to carry a firearm, and that one of the appellant's subordinates gave D az a clean bill of health, informing the assigned investigator that D az's file did not contain any mention of past complaints or any other indicium of his disquieting history. They also allege that V zquez, in derogation of his assigned duties, did not maintain up-to-date files, and, consequently, neither identified D az as a recidivist officer nor recommended that he undergo remedial training. As a result, Officer D az returned to duty without enduring any probationary period, without receiving any remedial training, and, after a delay to permit the completion of the personnel director's investigation, without having any restrictions on his 3 right to carry a firearm.2 On his second day of armed duty, September 8, 1993, Officer D az was stationed at the Barbosa Public Housing Project, a location which the police regarded as a high-tension area. That afternoon, while on guard duty, he accosted the plaintiffs' decedent, Jos Manuel Rosario D az (Jos ), a 19-year-old resident of the project, and ordered him to retrieve identification documents from his apartment. When Jos did not comply with sufficient alacrity, Officer D az shouted obscenities at him. Jos 's sister, Mar a Rosario D az (Mar a), attempted to intervene. A scuffle ensued. Officer D az drew his police revolver, fired a bullet at Mar a (wounding her), and then shot and killed Jos . In due season, Mar a and other family members brought suit under 42 U.S.C. 1983 (1994). They alleged that Officer D az and several supervisory police officials, including V zquez, had violated Mar a's and Jos 's constitutional rights. V zquez moved for summary judgment, raising, inter alia, a qualified _____ ____ immunity defense. The district court denied his motion. V zquez now prosecutes this interlocutory appeal. Section 1983 provides for a private right of action against public officials who, under color of state law, deprive individuals of rights declared by the Constitution or laws of the United States. Nonetheless, a public official accused of civil  ____________________ 2For purposes of his summary judgment motion, described infra, V zquez did not contest these allegations, and we _____ therefore must accept them as true. 4 rights violations is shielded from claims for damages under section 1983 as long as his conduct did not violate rights that were "clearly established" under the Constitution or under federal law. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 ___ ______ __________ (1982); Buenrostro v. Collazo, 973 F.2d 39, 42 (1st Cir. 1992). __________ _______ For purposes of this defense, a right is clearly established if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 ________ _________ (1987). Interlocutory orders (such as orders denying pretrial motions to dismiss or for summary judgment) ordinarily are not appealable as of right at the time they are entered. See 28 ___ U.S.C. 1291 (1994). But where, as here, a defendant seeks the shelter of qualified immunity by means of a pretrial motion and the nisi prius court denies the requested relief, a different result sometimes obtains. If the pretrial rejection of the qualified immunity defense is based on a purely legal ground, such as a finding that the conduct described by the plaintiff, assuming it occurred, transgressed a clearly established right, then the denial may be challenged through an interlocutory appeal. See Johnson, 115 S. Ct. at 2155-56. Conversely, "a ___ _______ defendant, entitled to invoke a qualified-immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a `genuine' issue of fact for trial." Id. at 2159. The ___ 5 dividing line that separates an immediately appealable order from a nonappealable one in these purlieus is not always easy to visualize. In Stella, we attempted to illuminate it: ______ Thus, on the one hand, a district court's pretrial rejection of a proffered qualified immunity defense remains immediately appealable as a collateral order to the extent that it turns on a pure issue of law, notwithstanding the absence of a final judgment. On the other hand, a district court's pretrial rejection of a qualified immunity defense is not immediately appealable to the extent that it turns on either an issue of fact or an issue perceived by the trial court to be an issue of fact. In such a situation, the movant must await the entry of final judgment before appealing the adverse ruling. Stella, 63 F.3d at 74 (citations omitted). Under Johnson and ______ _______ Stella, then, a defendant who, like V zquez, has unsuccessfully ______ sought summary judgment based on qualified immunity is permitted to appeal the resultant denial on an interlocutory basis only to the extent that the qualified immunity defense turns upon a "purely legal" question. Behrens marks the Supreme Court's latest effort to shed _______ light upon the timing of qualified immunity appeals. There, the Court noted that "[d]enial of summary judgment often includes a determination that there are controverted issues of material fact" and admonished that Johnson "does not mean that every such _______ denial of summary judgment is nonappealable." Behrens, 116 S. _______ Ct. at 842. Rather, when a court, in denying a motion for summary judgment premised on qualified immunity, determines that certain conduct attributed to a defendant, if proven, will 6 suffice to show a violation of clearly established law, the defendant may assert on interlocutory appeal "that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the Harlow standard of ______ `objective legal reasonableness.'" Id. (quoting Harlow). To ___ ______ this extent, Behrens places a gloss on Johnson and reopens an _______ _______ appellate avenue that some had thought Johnson foreclosed. _______ Still, this court anticipated the Behrens gloss in Stella, where _______ ______ we wrote that a summary judgment "order that determines whether certain given facts demonstrate, under clearly established law, a violation of some federally protected right" may be reviewed on an intermediate appeal, Johnson notwithstanding, without awaiting _______ the post-trial entry of final judgment. Stella, 63 F.3d at 74- ______ 75. Thus, Stella survives the emergence of Behrens fully intact ______ _______ and remains the law of this circuit. The appeal at hand withers in the hot glare of these precedents. Under section 1983, a supervisor may be found liable on the basis of his own acts or omissions. See Maldonado-Denis ___ _______________ v. Castillo- Rodriguez, 23 F.3d 576, 581-82 (1st Cir. 1994). ____________________ Such liability can arise out of participation in a custom that leads to a violation of constitutional rights, see, e.g., id. at ___ ____ ___ 582 (citing other cases), or by acting with deliberate indifference to the constitutional rights of others, see, e.g., ___ ____ Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. ___________________ _________ 1989) (citing other cases). The plaintiffs' case against V zquez hinges on his alleged deliberate indifference; they claim, in 7 essence, that if he had minded the store, the shootings would not have transpired because Officer D az, given his horrendous record, would not have been rearmed (or, at least, would not have been rearmed without first having been retrained and rehabilitated), and therefore, that the tragic events of September 8 would not have occurred. V zquez's motion for brevis disposition challenged this ______ theory, legally and factually. In adjudicating it, the district court made a binary determination. First, the court ruled that a reasonable official in V zquez's position would have known that the "failure to take . . . remedial actions concerning [a rogue officer] could create supervisory liability." This is a pure conclusion of law as to which, in the qualified immunity context, an immediate appeal lies. See Behrens, 116 S. Ct. at 839; ___ _______ Stella, 63 F.3d at 77; see also Mitchell v. Forsyth, 472 U.S. ______ ___ ____ ________ _______ 511, 528 n.9 (1985) (acknowledging that the question of whether the conduct attributed by a plaintiff to a particular defendant violates a clearly established right is a "purely legal" question). Nonetheless, we agree with the lower court that the applicable law was clearly established; it is beyond serious question that, at the times relevant hereto, a reasonable police supervisor, charged with the duties that V zquez bore, would have understood that he could be held constitutionally liable for failing to identify and take remedial action concerning an officer with demonstrably dangerous predilections and a checkered 8 history of grave disciplinary problems. See Gutierrez-Rodriguez, ___ ___________________ 882 F.2d at 562-64; see generally Maldonado-Denis, 23 F.3d at 582 ___ _________ _______________ (explaining that a showing of gross negligence on a supervisory official's part "can signify deliberate indifference and serve as a basis for supervisory liability if it is causally connected to the actions that work the direct constitutional injury"). To the extent that V zquez's appeal seeks to contest this verity, it is baseless. Having disposed of the purely legal question, we are left with V zquez's asseveration that the district court erred in denying his motion for summary judgment because, regardless of legal theory, the evidence was insufficient to establish deliberate indifference on his part, and, thus, he was entitled (at the least) to qualified immunity. But Judge Laffitte rejected this argument on the basis that the record contained controverted facts and that, if a factfinder were to resolve those disputes favorably to the plaintiffs, he could then find that V zquez's supervision of the disciplinary affairs bureau was so pathetic that his conduct constituted deliberate indifference to the plaintiffs' rights.3 Since V zquez does not argue that  ____________________ 3This rejection was factbound. In denying V zquez's motion for brevis disposition, Judge Laffitte, citing various exhibits, ______ commented that "the record is replete with evidence that [Officer D az's] disciplinary file was poorly maintained." The judge then pointed to evidence indicating "that many of the police department's disciplinary files on its officers were incomplete," and noted specifically evidence to the effect "that V zquez failed to maintain [Officer D az's] disciplinary records, failed to identify him as an officer [who had engaged in] repetitive conduct, and failed to refer him for training." Judge Laffitte further observed that, had the file been properly maintained, 9 the facts asserted by the plaintiffs, even if altogether true, fail to show deliberate indifference he argues instead what his counsel termed at oral argument "the absence of facts," i.e., that the facts asserted by the plaintiffs are untrue, unproven, warrant a different spin, tell only a small part of the story, and are presented out of context the district court's determination is not reviewable on an interlocutory appeal. See ___ Behrens, 116 S. Ct. at 842; Johnson, 115 S. Ct. at 2156-59; _______ _______ Berdec a-P rez v. Zayas-Green, ___ F.3d ___, ___ (1st Cir. 1997) ______________ ___________ [No. 96-1490, slip op. at 3]; Santiago-Mateo v. Cordero, ___ F.3d ______________ _______ ___, __ (1st Cir. 1997) [No. 96-1688, slip op. at 3-5]; Stella, ______ 63 F.3d at 75-77. We need go no further. To the extent that V zquez's challenge to the order denying summary judgment is ripe for review, it is impuissant. Affirmed. Costs to appellees. Affirmed. Costs to appellees. ________ __________________  ____________________ Officer D az likely would have been evaluated as unfit to return to regular duty. In the court's view, this (and other) evidence, taken in the light most complimentary to the plaintiffs, was "sufficient to create a genuine issue of material fact as to whether [V zquez] was deliberately indifferent and whether this failure to maintain an accurate file on [Officer D az] caused [the plaintiffs'] injuries." 10