**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 30 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

JOSEPH E. RICH, M.D.,
an individual,

      Plaintiff-Appellant,

v.

MED-NATIONAL INC.,

      Defendant-Appellee,

    and

THE DEPARTMENT OF THE AIR
FORCE; SHEILA A. WIDNALL, in
her official capacity as Secretary of
the Air Force, LT. COLONEL
KATHERINE E. SCHEIRMAN,
COLONEL DAVID BISSELL, and
ROBERT S. WELLBORN, JR.,

      Defendants.

No. 96-6235
(D.C. No. CIV-95-616-A)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **ANDERSON**, **BARRETT**, and **MURPHY**, Circuit Judges.

_____

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiff Joseph E. Rich, M.D, brought this action against defendants relating to his termination as a physician working under contract with Med-National, Inc., at Tinker Air Force Base near Oklahoma City. Plaintiff's claims against defendants Department of the Air Force, Widnall, Scheirman, Bissell, and Wellborn were dismissed and are not part of this appeal. Against the remaining defendant, Med-National, plaintiff asserted claims for breach of contract, breach of implied covenant of good faith and fair dealing, fraudulent inducement to contract, and violation of Oklahoma wage law. The district court granted summary judgment in Med-National's favor on the good faith and fair dealing and Oklahoma wage law claims, and denied plaintiff's motion for summary judgment on his breach of contract claim. At trial, the district court granted Med-National's motion for judgment as a matter of law on the fraudulent inducement claim, and the jury rendered a verdict against plaintiff on his breach

of contract claim.  Plaintiff appeals, raising issues relating only to his breach of contract and Oklahoma wage law claims.

**I**

The relevant facts briefly stated are these.  Med-National had a contract with the Air Force to provide physician services at the Tinker Air Force Base Hospital and Clinic.  In late 1993, Med-National solicited and eventually hired plaintiff under contract to fill an OB-GYN position under the Air Force contract beginning on January 3, 1994, for the remaining life of its contract with the Air Force, which was scheduled to end in 1998.  Plaintiff's contract with Med-National (as well as Med-National's contract with the Air Force) required that he obtain privileges to practice at Tinker from the base's credentialing committee.  To obtain privileges, plaintiff had to provide, through Med-National, a history of his licensing and privileges in other states and at other hospitals.  The committee granted plaintiff provisional privileges on January 3, 1994, which allowed him to practice, and granted him full privileges three months later.

Plaintiff practiced at Tinker from January 2 to May 26, 1994.  During this time, there were several official complaints regarding his practice.  On May 26, 1994, the credentials committee placed plaintiff's privileges to practice at Tinker in abeyance due to his providing allegedly incomplete and misleading information regarding his previous licensing in Kansas and Kentucky.  The initial abeyance

period was fourteen days, which was extended another fourteen days on June 16. On June 23, 1994, Med-National summarily terminated its contract with plaintiff, its stated reasons being the abeyance of his privileges and the complaints regarding his performance.

Section XII of plaintiff's contract with Med-National provided that it could be terminated upon written or oral notice on the occurrence of any of the following events:

1. Whenever the Physician shall cease to be a "Licensed Physician" in the state or states in which he is licensed to practice medicine. . . .

2. The death of the Physician (in which case notice shall not be necessary).

3. The inability of the Physician to practice medicine due to physical or mental disability exceeding a period of thirty (30) days.

4. Whenever the Physician fails or refuses to perform faithfully and diligently the duties as set forth in the Contract.

5. The Company shall have the right to terminate this Agreement with thirty (30) days notice being given to the Physician at any time for cause, or as stated herein. . . .

6. The Physician may terminate this Agreement by giving thirty (30) days notice to the Company of his intent, stating reasons and exact date of departure.

7. Failure to obtain approval of the Credentials Committee and/or the Credentials Review Organization shall give the Company the right to terminate this Agreement at any time by giving notice to the Physician of his failure to receive approval. . . .

Appellant's App. Vol. I at 72-73. In terminating plaintiff, Med-National specifically relied on paragraphs 4, 5, and 7 above. See id. at 81. It did not compensate plaintiff for any time after May 26, the date his privileges were first placed in abeyance.

Plaintiff subsequently brought this action. In his breach of contract claim, he contended that Med-National terminated him without cause and that in any event he was entitled to thirty-days' notice prior to termination, which Med-National did not provide. In his Oklahoma wage law claim, he contended that Med-National owed him for unpaid compensation for the period from May 26 to July 23, 1994, the date he contended the contract could have been terminated considering the thirty-days' notice requirement. On appeal, plaintiff raises four issues: (1) the district court erred in denying his motion for summary judgment on his breach of contract claim; (2) the jury's verdict against him on his breach of contract claim is not supported by sufficient evidence; (3) the district court erred in refusing to instruct the jury regarding contract ambiguity and construction; and (4) the district court erred in granting summary judgment against him on his Oklahoma wage law claim.

**II**

A. Denial of Summary Judgment

Plaintiff first contends that the district court erred in denying summary judgment on that part of his breach of contract claim in which he contended he was entitled to thirty-days' notice prior to termination. Plaintiff contended that paragraph 5 of the termination clause in the contract, which Med-National cited in its termination letter, required that he be provided thirty-days' notice prior to his termination. In denying summary judgment, the court stated:

> The Court finds that genuine issues of material fact preclude summary judgment for either plaintiff or Med-National on this issue. The [Fed. R. Civ. P.] 56(c) evidence presented by the parties paints a confused picture of why plaintiff was terminated. According to Med-National, it was informed that the possibility of plaintiff's privileges being reinstated was non-existent. The question is whether Med-National relied solely on ¶ XII(5) in its decision to terminate. If so, it will be liable for breach of contract for failing to provide thirty days notice. This question involves a factual issue that must be decided by the jury. Accordingly, summary judgment is inappropriate on this issue.

Appellant's App. Vol. III at 652-53.

Post-trial appellate review of a denial of summary judgment differs depending on the reason for the denial. Where summary judgment has been denied and the case proceeds to trial, we may review the denial of summary judgment if that denial was based on purely a legal issue. See Wolfgang v. Mid-

-6-

America Motorsports, Inc., 111 F.3d 1515, 1521 (10th Cir. 1997).  The same is not true, however, where the denial is based on factual issues, as in this case.

> The denial of summary judgment based on factual disputes is not properly reviewable on an appeal from a final judgment entered after trial.  Whalen v. Unit Rig, Inc., 974 F.2d 1248, 1250-51 (10th Cir., cert. denied, 507 U.S. 973, . . . (1993).  "[E]ven if summary judgment was erroneously denied, the proper redress would not be through appeal of that denial but through subsequent motions for judgment as a matter of law . . . and appellate review of those motions if they were denied."  Id. at 1251.  Failure to renew a summary judgment argument--when denial was based on factual disputes--in a motion for judgment as a matter of law under Fed. R. Civ. P. 50(a)(1) at the close of all the evidence is considered a waiver of the issue on appeal.  Allahar v. Zahora, 59 F.3d 693, 695-96 (7th Cir. 1995).

Wolfgang, 111 F.3d at 1521.  Plaintiff did not move for judgment as a matter of law.  We therefore will not review the district court's denial of his summary judgment motion because it did so due to factual disputes.

## B. Insufficient Evidence

Plaintiff next contends that the jury's verdict that Med-National did not breach the contract by terminating him without cause is not supported by sufficient evidence.  As we noted above, however, plaintiff failed to move for judgment as a matter of law on this (or any) issue.  He therefore failed to preserve this issue for appellate review, and we will not consider it further.  See FDIC v. United Pac. Ins. Co., 20 F.3d 1070, 1076 (10th Cir. 1994).

C. Jury Instructions

Plaintiff also contends that the district court erred in failing to instruct the jury on contract ambiguity and construction as he had requested.[1]  In rejecting at

---

[1]     Plaintiff objected to the district court's rejection of three of his proposed instructions.  Proposed instruction No. 2 stated that the jury needed to decide the meaning of certain quoted terms in the contract, including the termination clause, and then stated that:

> In deciding the meaning of these terms, you must decide what the intent of the parties was when they made their contract.  To decide what their intent was you should first examine the language of the contract.  You may also consider the circumstances under which the parties made the contract, and what the parties themselves believed the terms meant as shown by the evidence.
>
> A contract should be interpreted so that it is reasonable and capable of being carried out, if this can be done without changing the intention of the parties.

Appellant's App. Vol. III at 713.  Proposed instruction No. 3, labeled "Entire Contract," stated that:

> A contract is to be interpreted as a whole, and the overall intention of the parties is controlling over the separate parts of a contract.
>
> If possible, each part of a contract must be used to help interpret the other parts, but if one part is wholly inconsistent with the general intention of the parties, it should be rejected.

Id. at 714.  Proposed instruction No. 4, labeled "Construction Against Party Causing Uncertainty," stated:

> If you cannot decide the intention of the parties after considering Instruction Nos. ___ to ___, then you should interpret the unclear terms in the contract most strongly against the party responsible for the uncertainty.

(continued...)

-8-

trial plaintiff's objections to the instructions, the district court stated that "[t]he question, in my opinion, is not whether anything in the contract is ambiguous, it's which term applies to which situation, and the jury has to decide what the situation is and then they decide which term applies to it." Appellant's App. Vol. V at 1455. The court did not give any instructions to guide the jury on interpreting or construing the contract. Three days after the trial had concluded, the court issued a written order further explaining its reasons for rejecting plaintiff's objections, stating that plaintiff had waived any issue regarding whether the contract was ambiguous because he had failed to raise the issue timely. Plaintiff contends both that the objection was timely and that the court's failure to instruct as he requested was prejudicial.

We review a district court's decision whether to give a particular instruction for abuse of discretion. See <u>Harrison v. Eddy Potash, Inc.</u>, 112 F.3d

---

[1](...continued)
> In this case, you are instructed that Med-National drafted the contract and is the party responsible for any uncertainty.

<u>Id.</u> at 715. Instruction Nos. 2 and 3, which were virtually identical to instructions proposed by Med-National, also included this note: "This Instruction should only be given if the Court determines that one or more terms of the [contract] is/are ambiguous." <u>Id.</u> at 713, 715. Plaintiff also objected to the court's instruction No. 13 "to the extent that instruction contains a statement that the contract is clear and unambiguous." <u>Id.</u> at 1455. That instruction stated in part that "[y]ou are advised that a contract that is clear and unambiguous in its terms is binding on all parties to the contract. Such a contract should be accepted by you as the agreement of the parties." <u>Id.</u> at 740.

-9-

1437, 1442 (10th Cir. 1997), petition for cert. filed, 66 U.S.L.W. 3137 (Aug. 6, 1997). We conduct a de novo review to determine whether the instructions as a whole correctly stated the governing law and provided the jury with an adequate understanding of the issues and applicable standards. See id. "Reversal is warranted only where a deficient jury instruction is prejudicial." Id. (quotation omitted).

We conclude that the court erred in failing to give plaintiff's requested instructions regarding contract construction and ambiguity. Turning first to the court's post-judgment determination that plaintiff waived these issues, we believe plaintiff's objections were timely and preserved these issues for both the district court's and our consideration. Fed. R. Civ. P. 51 provides that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." This requirement allows the district court an opportunity to make changes to instructions and correct any errors, and, from an appellate standpoint, prevents a litigant from taking advantage of any error that the district court could have rectified. See Weir v. Federal Ins. Co., 811 F.2d 1387, 1390 (10th Cir. 1987); Aspen Highlands Skiing Corp. v. Aspen Skiing Co., 738 F.2d 1509, 1514 (10th Cir. 1984), aff'd, 472 U.S. 585 (1985).

Plaintiff submitted his proposed instructions on the first day of trial, and while the court indicated they were filed substantially out of time, the court did not reject the proposed instructions as untimely.[2] After the court instructed the jury, and importantly, before the jury retired, the court asked if there were any objections. That was when plaintiff raised his objections, which is what Rule 51 requires. In denying the objections, the court stated that it did not find the contract to be ambiguous, and there is no indication the court did not understand the objections. See City of Wichita v. United States Gypsum Co., 72 F.3d 1491, 1495 n.1 (10th Cir. 1996). The court thus was presented with an opportunity to make any necessary changes to the instructions, and it determined that none were

---

[2]    While the court indicated in its post-judgment order that plaintiff's submission of these proposed instructions was the first notice to the court that plaintiff was contending that the contract was ambiguous, it also noted that

> [i]n the numerous summary judgment filings, plaintiff did not address the issue [of contract ambiguity], except to note that the contract was not ambiguous, but if it were, that any ambiguity be construed against the defendant. Plaintiff's Trial Brief alleges that "Med-National has argued a strained and self-serving interpretation of the notice of termination provisions of the Agreement and has attempted to impose an ambiguity into the language of the Agreement where none exists."

Appellant's App. Vol. III at 751. The fact that both parties took contrary views of the contract language provided some indication that the contract may be ambiguous. Cf. Pollock v. FDIC, 17 F.3d 798, 803 n.7 (5th Cir. 1994) ("[I]t is implicit in the argument that a document which is unambiguous in one direction necessarily involves some element that the instrument is, at least, not unambiguous in the other direction.").

necessary. Rule 51 does not require that an objection have been previously raised for it to be effective. See Productive Automated Sys. Corp. v. CPI Sys., Inc., 61 F.3d 620, 624 (8th Cir. 1995) ("Nothing in the rule requires that a party's objection occur at an instructions conference or at any other particular time, provided that the party asserts an objection before the jury retires."); Gregg v. U.S. Indus., Inc., 887 F.2d 1462, 1467-68 & n.6 (11th Cir. 1989) (finding objection timely even though made after party had previously agreed to it at instruction conference). We thus proceed to the merits of plaintiff's argument.

Plaintiff's general contention is that under section XII of the contract, all terminations (except those due to death) require thirty-days' notice. In other words, plaintiff contends that paragraph 5, the only paragraph specifically requiring Med-National to give thirty-days' notice, applies to all terminations including those under paragraphs 4 and 7, which Med-National claimed were the bases for termination. Plaintiff's general position is that this is what the contract plainly means, but his fall-back position is that if the contract does not plainly mean this, then it is ambiguous and should be construed in his favor. As noted earlier, the three relevant paragraphs allow termination on written or oral notice in the following circumstances:

> 4. Whenever the Physician fails or refuses to perform faithfully and diligently the duties as set forth in the Contract.

5.      The Company shall have the right to terminate this Agreement with thirty (30) days notice being given to the Physician at any time for cause, or as stated herein. . . .

7.      Failure to obtain approval of the Credentials Committee and/or the Credentials Review Organization shall give the Company the right to terminate this Agreement at any time by giving notice to the Physician of his failure to receive approval. . . .

In denying plaintiff's summary judgment motion, the district court had rejected plaintiff's position, holding that the thirty-days' notice provision applied only to paragraph 5 and that unless paragraph 5 was the sole basis for plaintiff's termination, he was not entitled to the notice period.

Whether a contract is ambiguous is a question of law.  See Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co., 99 F.3d 695, 700 (5th Cir. 1996) (applying Texas law).[3]  A contract is ambiguous if it is reasonably susceptible to at least two different meanings.  See id.  In determining whether a contract is ambiguous, we "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless."  Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983) (emphasis omitted).

---

[3]      Although plaintiff argued in the district court that Oklahoma law applied to the breach of contract claim, he does not challenge on appeal the court's determination that Texas law applied.

We agree with plaintiff that the termination provisions are ambiguous regarding notice. Paragraph 5 requires thirty-days' notice for terminations "for cause, or as stated herein." Paragraphs 4 and 7 allow terminations for particular causes--failure or refusal to perform faithfully and diligently and failure to obtain credentials approval. Med-National contends that these particular causes fall within paragraph 5's "exclusion" for terminations otherwise "as stated herein" that do not require thirty-days' notice. That may be one reasonable meaning of the three paragraphs, but it is not the only one. If that were the only meaning, then paragraph 7's provision for termination "at any time," which clearly contemplates an exception to paragraph 5's thirty-days' notice requirement, would be superfluous. To give that provision of paragraph 7 meaning, paragraph 5 could be read as requiring thirty-days' notice for any termination for cause unless section XII elsewhere allows termination on different terms. Under that interpretation, a termination under paragraph 4, which omits paragraph 7's provision for terminations "at any time," would require thirty-days' notice. Moreover, Med-National's view that "cause" in paragraph 5 necessarily excludes all causes mentioned elsewhere in section XII leaves paragraph 5 virtually empty of any significant meaning; that is, it is difficult to imagine a termination for cause that would be not covered by some other paragraph of section XII. In any

-14-

event, the termination provisions in the contract are poorly written and are ambiguous.

Because the termination provisions are ambiguous, their interpretation becomes a factual matter. See Coker, 650 S.W.2d at 394. Proper jury instructions regarding contract interpretation thus become critical. Texas follows the general rule that ambiguous contracts should be construed against the drafter, see, e.g., Enell Corp. v. Longoria, 834 S.W.2d 132, 134 (Tex. Ct. App. 1992); cf. Clardy Mfg. Co. v. Marine Midlands Bus. Loans Inc., 88 F.3d 347, 355 (5th Cir. 1996) (noting that under Texas law, the rule is disfavored but should be applied when other rules of construction fail), cert. denied, 117 S. Ct. 740 (1997), and it is undisputed here that Med-National drafted the contract. We conclude that the court should have given plaintiff's proposed instruction No. 4 dealing with ambiguity ("Construction against Party Causing Uncertainty"), as well as plaintiff's proposed instruction Nos. 2 and 3, the general contract interpretation instructions.

The court's failure to give appropriate instructions is not reversible error unless, considering the instructions as a whole, we have substantial doubt whether they properly guided the jury, see Mason v. Oklahoma Turnpike Auth., 115 F.3d 1442, 1454 (10th Cir. 1997), and we determine the error to have been prejudicial, see Harrison, 112 F.3d at 1442. The jury instructions in this case were, at best,

confusing and incomplete. At the minimum, they deprived plaintiff of the opportunity to fairly present and the jury to consider a theory of plaintiff's case--ambiguity--which we have determined was an appropriate and timely presented theory. This error was prejudicial.

To fully appreciate the shortcomings of the jury instructions, it is helpful to understand the confusion throughout the trial in the treatment of the concept of ambiguity. Notwithstanding the trial court's post-trial suggestion that the theory of ambiguity was not timely presented, both sides were permitted to present testimony of the meaning of the contractual notice requirement. See Appellant's App. Vol. IV at 967-70; Vol. V at 1253-56. Furthermore, the court confusingly referenced the concept of ambiguity in its Instruction No. 13:

> The claim in this case is for damages resulting from a breach of contract. A contract is defined as an agreement to do or not to do a certain thing or things. In this case, the contract was in writing and is in evidence before you, that is, the Physician Services Agreement.
>
> A contract is breached or broken when a party to the contract fails without legal excuse to do what it promised to do in the contract. *You are advised that a contract that is clear and unambiguous in its terms is binding on all parties to the contract.* Such a contract should be accepted by you as the agreement of the parties.

Appellant's App. Vol. III at 740 (emphasis added). In responding to plaintiff's objection to the italicized portion, the court initially denied that the instruction told the jury the contract was clear and unambiguous. See id. Vol. V at 1455.

-16-

Almost immediately thereafter, however, the court suggested that the contract was unambiguous.  See id. ("The question, in my opinion, is not whether anything in the contract is ambiguous, it's which terms applies to which situation . . . .").

It is from these confusing origins that the jury instructions came.  If not a direction that the contract in issue was clear and unambiguous, the reference in Instruction No. 13 to "a contract that is clear and unambiguous" was at least confusing as the only reference in the instructions to the concept of ambiguity. Confusion, however, is the least of the maladies.  The principal defect in the instructions was the failure to specify for the jury its obligation to resolve the ambiguity.  Plaintiff's proposed but rejected Instruction Nos. 2, 3, and 4 not only properly expressed the jury's duty to resolve the ambiguity, but they gave the jury the very tools necessary to resolve the contractual meaning and the parties' intent.[4]  Most importantly, plaintiff's proposed Instruction No. 4 would have directed the jury to construe the unclear terms against the drafter, Med-National, if all other factors failed to resolve the parties' intent.

In failing to instruct the jury on its duty to resolve the ambiguity, in failing to provide the jury with the basic tools of contract interpretation, and in failing to

---

[4]     The trier of fact must resolve contractual ambiguity by determining the parties' intent.  See Coker, 650 S.W.2d at 394-95.  Defendant Med-National does not challenge the legal principles enunciated in plaintiff's proposed Instructions Nos. 2, 3, or 4; it challenges only their applicability.

-17-

direct the jury to construe the contract against Med-National, the court not only erred but did so to the significant prejudice of the plaintiff. These failings deprived the plaintiff of the opportunity to fairly present and the jury to consider a theory of plaintiff's case, i.e., ambiguity. In this case, such deprivation constitutes prejudicial error. See Perlmutter v. United States Gypsum, 4 F.3d 864, 872-73 (10th Cir. 1993); Sullivan v. NFL, 34 F.3d 1091, 1107-09 (1st Cir. 1994); cf. EEOC v. Atlantic Community School Dist., 879 F.2d 434, 437 (8th Cir. 1989).

We therefore conclude that plaintiff is entitled to a new trial on that portion of his breach of contract claim relating to failure to provide thirty-days' notice prior to termination.

### D. Oklahoma Wage Law Claim

Plaintiff's final issue is that the district court erred in granting summary judgment on his Oklahoma wage law claim. Oklahoma law requires an employer to pay an employee's wages in full at termination, see Okla. Stat. tit. 40, § 165.3.A, and defines "wages" to include "salaries, commissions, holiday and vacation pay, overtime pay, *severance or dismissal pay*, bonuses and other similar advantages agreed upon between the employer and the employee . . . or provided by the employer to his employees in an established policy," id. § 165.1.4 (emphasis added). In his complaint, plaintiff alleged Med-National violated the wage statute by failing to pay him for the period from the time his privileges were

placed in abeyance to the earliest time he could have been terminated under the contract, which he contends was thirty days after the date he received notice of termination.[5]  Med-National moved for summary judgment solely on the basis that plaintiff was not an employee but rather was an independent contractor to whom the statute did not apply.  The district court rejected Med-National's contention and concluded that plaintiff was an employee for purposes of the statute.

The court, however, granted summary judgment to Med-National on two alternative bases that neither party had addressed.  First, it concluded that there was no evidence that plaintiff performed any work after May 26, 1994, and that "[a]lthough plaintiff may be owed money for breach of contract, his claims do not involve any money owed for work actually performed."  Appellant's App. Vol. III at 659-60.  In addition, the court found that there was a "bona fide disagreement" over the amount of wages owed and that, pursuant to § 165.4, Med-National's payment of the amount it conceded was due resolved plaintiff's claim.[6]

---

[5]     Plaintiff's contract claim regarding the notice period and his Oklahoma wage law claim generally seek recovery for the same damages--compensation for the period from May 26 until he was notified of his termination and then for an additional thirty days.  The Oklahoma wage law also allows recovery of liquidated damages for an employer's failure to make timely payment of wages due (§ 165.3.B) and of attorney fees and costs (§ 165.9).

[6]     Because Med-National did not move for summary judgment on either of these grounds, the district court should have provided notice to plaintiff that it was considering granting summary judgment on these grounds.  See Tavery v. United States, 32 F.3d 1423, 1427 n.5 (10th Cir. 1994).  Though plaintiff notes on
(continued...)

-19-

On appeal, plaintiff contends that the contract requirement of a notice period and corresponding compensation qualifies as severance or dismissal pay under § 165.1.4. We agree with plaintiff's interpretation of the statute. Oklahoma courts appear to construe this statute liberally in favor of the employee. Cf. Green Bay Packaging, Inc. v. Preferred Packaging, Inc., 932 P.2d 1091, 1099 (Okla. 1996) (holding that employer's policy of compensating employees for legitimate business expenses brings payment for expenses within statute). We disagree with the district court that the statute only covers "work actually performed." Severance or dismissal pay ordinarily would not cover work actually performed. Plaintiff's claim for payment for the notice period is similar enough to severance or dismissal pay that we conclude it would be covered under the statute.

We also conclude the district court misread § 165.4 regarding bona fide disagreements. That section specifically provides that an employee's acceptance of the employer's payment of the amount it concedes is due "shall not constitute a release as to the balance of his claim." Payment may relieve an employer from liability for liquidated damages, but it is unclear what the full effect of § 165.4 is. Moreover, for a payment to qualify under § 165.4, "the employer shall give

---

[6](...continued)
appeal that the court granted summary judgment on grounds not raised by Med-National, he does not contend that this was error.

written notice to the employee of the amount of wages which he concedes to be due." Since neither party raised this issue on summary judgment, there is no evidence whether Med-National provided proper notice. We therefore reverse the district court's grant of summary judgment on this claim.

## III

The judgment of the district court is AFFIRMED in part and REVERSED in part, and the case is REMANDED for further proceedings consistent with this order and judgment.

Entered for the Court

Michael R. Murphy
Circuit Judge